PEOPLE v. YOUNGS.

1. CRIMINAL LAW—ATTEMPTS.

To constitute an attempt, at common law, something more than an intention or purpose to commit crime is necessary; and this is not changed by the statute (3 Comp. Laws 1897, § 11784) prescribing a punishment for one who shall attempt to commit a crime, and in such attempt shall do any act towards the commission of the offense, but shall fail in the perpetration, or shall be intercepted or prevented in the execution, of the same.

2. SAME—ATTEMPT TO COMMIT BURGLARY—EVIDENCE.

One should not be convicted of an attempt to break and enter a dwelling upon evidence merely that he left his home, and met, by prearrangement, a supposed confederate at a saloon on the way to the dwelling, and after loading his revolver there, and procuring extra cartridges for it, went to a drug-store and bought chloroform, which, with carpet slippers and the weapon, was found on his person by the officers who arrested him as he came out of the store. GRANT, C. J., dissenting.

Error to Hillsdale; Chester, J. Submitted October 26, 1899. Decided December 12, 1899.

Clarence Youngs was convicted of an attempt to break and enter a dwelling, and sentenced to imprisonment for two years and six months in the state prison at Jackson. Reversed.

*William C. Chadwick,* for appellant.

*William H. Frankhauser,* Prosecuting Attorney, for the people.

MONTGOMERY, J.   Two questions present themselves: (1) Does the statute in question change the common-law rule as to what constitutes an attempt to commit an offense?   (2) If not, whether the facts stated show an attempt, as defined at the common law.   In my opinion, both these questions should be answered in the negative. The statute, in terms, relates to attempts to commit a crime, and, to make the intent still more certain, provides that, before the offense shall be complete, the accused shall do some act towards the commission of such offense. This does not eliminate any of the elements of the common-law offense of attempt to commit crime.   On the contrary, it enumerates them.   To constitute an attempt, at the common law, something more than an intention or purpose to commit crime is necessary.   As was said by Field, C. J., in *People* v. *Murray*, 14 Cal. 159:

" Between preparation for the attempt and the attempt itself there is a wide difference.   The preparation consists in devising or arranging the means or measures necessary for the commission of the offense.   The attempt is the direct movement towards the commission after the preparations are made."

In *Reg.* v. *Taylor*, 1 Fost. & F. 512, the chief baron said:

"The act, to constitute a criminal attempt, must be one immediately and directly tending to the execution of the principal crime, and committed by the prisoner under such circumstances that he has the power of carrying his intention into execution.   If two persons were to agree to commit a felony, and one of them were, in execution of his share in the transaction, to purchase an instrument to be used in the course of the felonious act, that would be a sufficient overt act in an indictment for conspiracy, but not in an indictment of this nature."

See, also, *McDade* v. *People*, 29 Mich. 50; *Hicks* v.

*Com.*, 86 Va. 223 (19 Am. St. Rep. 891); *Reg.* v. *Mc-Cann*, 28 U. C. Q. B. 514; *Stabler* v. *Com.*, 95 Pa. St. 318 (40 Am. Rep. 653); *Com.* v. *McDonald*, 5 Cush. 367; *Griffin* v. *State*, 26 Ga. 493; *People* v. *Machen*, 73 Mich. 27; 3 Am. & Eng. Enc. Law (2d Ed.), 266.

The sentence is set aside, and the prisoner discharged.

Hooker, Moore, and Long, JJ., concurred with Montgomery, J.

Grant, C. J. (*dissenting*).    The respondent was convicted under the following statute:

"Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration, or shall be intercepted or prevented in the execution, of the same, when no express provision is made by law for the punishment of such attempt, shall be punished as follows," etc.    3 Comp. Laws 1897, § 11784.

The information charges an attempt to break and enter the dwelling house of one Ralph Walker on May 27, 1899. The acts charged are that—

"He, the said Clarence Youngs, came to Hillsdale, Michigan, said Hillsdale, Michigan, being towards the dwelling house of the said Ralph Walker from the home of the said Clarence Youngs, at which place, Hillsdale, he loaded a revolver, and secured other cartridges therefor, and purchased a drug known as 'chloroform,' to be used in the commission of said offense, but he, the said Clarence Youngs, failed in the perpetration of said offense, and was intercepted and prevented in the execution of the same by being arrested."

The facts shown by the prosecution are these: Respondent lived about nine miles southeast of Hillsdale. Had worked husking corn in the fall of 1898 for Mr. Walker, who lived about 10 miles northeast of Hillsdale.    On May 22d one Munson Foughty met respondent in a saloon in Hillsdale.    He proposed to Foughty to go over to Walker's and get his money.    He stated to Foughty that Walker was possessed of a considerable sum of money; that he

knew where Walker kept it,—in the bureau drawer; and that he would get a pair of carpet slippers and a little chloroform. He fixed the following Saturday night as the time for the commission of the crime, telling Foughty that he would be in Hillsdale on Saturday for that purpose, and requested Foughty to meet him at the saloon. Foughty met him on that day at the appointed place. Respondent had a revolver, went out and purchased some cartridges, and returned to the saloon, and the two went down in the basement of the saloon. Respondent then loaded his revolver, saying, "That came pretty near killing one man the other night, and I am going to have that money tonight, or it will kill another man." He asked Foughty if he had a revolver, and Foughty replied that he had. Respondent then went into a drug-store and purchased some chloroform, to be used in the commission of the crime. He had the slippers upon his person, to be used in entering the house. On emerging from the drug-store he was arrested, and the slippers, chloroform, revolver, and cartridges were found upon his person. He further stated to Foughty that he knew where Walker lived; that he would get in through the window and chloroform him. When arrested, he denied having any chloroform, and, when it was found, said that his mother had sent him for it. These facts were not controverted, as respondent introduced no testimony.

It is contended that these acts do not constitute an attempt to commit the crime, but only a preparation, which the statute does not cover. Two things are essential to constitute an attempt, under the statute: (1) The intent to commit the crime; (2) some act or acts which are necessary towards its perpetration. Hochheimer, in his recent work on the Law of Crimes and Criminal Procedure (section 516), thus defines a common-law attempt:

"Any act in the nature of a direct movement towards the commission of an offense is an attempt to commit the offense. It is sufficient that one step be taken towards the actual commission of the crime; but mere preparation or planning is insufficient."

Wharton says:

"An attempt is such an intentional preliminary guilty act as will apparently result, in the usual course of natural events, if not hindered by extraneous causes, in the commission of a deliberate crime." 1 Whart. Cr. Law (10th Ed.), § 179.

See, also, 3 Am. & Eng. Enc. Law (2d Ed.), 250.

The authorities generally recognize the difficulty in determining what constitutes an attempt under this and similar statutes. How remote the act, coupled with the felonious intent, must be from the consummation of the crime, depends upon the various circumstances of each case. There is no simple and infallible test. 3 Am. & Eng. Enc. Law (2d Ed.), 265. The act need not be the last proximate one prior to the consummation. The felonious intent in this case is clearly established. The acts done were clearly in furtherance of that intent. Whether they were too remote is the sole question. In the early case of *Rex* v. *Sutton*, 2 Strange, 1074, the prisoner was held properly convicted for having in his custody and possession two iron stamps, with the intent to impress the scepters on sixpences and to pass them off for half guineas. The prisoner was held properly convicted of an attempt to commit burglary where he was intercepted while going up the steps of a house in the night-time, where he had no legitimate business, and had burglarious tools in his possession. *Com.* v. *Clark*, 10 Pa. Co. Ct. R. 444. The statute in that case authorized conviction for an attempt to commit the crime. It contained no language like that in the statute before us. The court commented upon the fact that the prisoner had left the public street, to go upon private property. If he had been arrested in the highway, why would not the attempt have been as complete? In an attempt to commit arson, it was held that those who were absent, knowing with what intent the others went, and assenting to it, were principals. *Uhl* v. *Com.*, 6 Grat. 706. Where one procured dies for stamping and imitating coin, but was apprehended

before he obtained the metal and the chemical preparations necessary for making them, he was held properly convicted of an attempt. *Reg.* v. *Roberts*, 33 Eng. Law & Eq. 553. The chief justice in that case stated that he would not attempt to lay down any rule as to what act done in furtherance of criminal intent will warrant an indictment, saying that he did not see the line precisely himself, but said, "No one can doubt that the procuring the dies and machinery was necessarily connected with the offense, and was for the express purpose of the offense." Procuring indecent prints, with the intent to publish them, was held an indictable offense, while preserving and keeping them with a like intent would not be. *Dugdale* v. *Reg.*, 1 El. & Bl. 435. The principle of that case is that procuring is an overt act, while possession alone is not. Where one procured camphene and other combustibles, placed them in his room, solicited another to use them in burning a barn, and promised to give him a deed to land if he would do so, he was held properly convicted of an attempt to commit arson. *McDermott* v. *People*, 5 Parker, Cr. R. 102. It is there stated:

"The two important and essential facts to be established to convict a person of an offense, are: *First*, an intent to commit the offense; and, *second*, some overt act, consequent upon that intent, towards its commission. So long as the act rests in bare intention, it is not punishable. '*Cogitationis poenam nemo patitur.*' It is only when the thought manifests itself by an outward act in or towards the commission of an offense, that the law intervenes to punish. As we cannot look into the mind to see the intent, it must, of necessity, be inferred from the nature of the act done; and, if that be unlawful, a wicked intent will be presumed. These are fundamental legal principles. Now, applied to the facts of this case, what do we find? We find that the defendant intended to commit the crime of arson. Indeed, he had committed the offense 'already in his heart.' What were the overt acts towards the commission? He had prepared camphene and other combustibles, and had them in his room, and then he went a step further, and solicited McDonnell to use those combustibles to burn the building, promising him, if

he would do so, to 'give him the deeds of the place, and assign to him his right in the same.' We have, then, the fixed design of the defendant to burn this barn, and overt acts towards the commission of the offense, and a failure in the perpetration of it. The offense, then, is fully made out; for the intent to do the wrongful act, coupled with the overt acts towards its commission, constitutes the *attempt* spoken of by the statute."

Where the prisoner entered into conspiracy with others to place a dangerous explosive upon the track of a railroad company, so that it would be exploded by a passing train, had met the other conspirators at the house of one of them, where the bomb was prepared and committed to the prisoner, and the conspirators agreed to meet at half-past 4 o'clock in the morning, at the junction of two streets, for the purpose of immediately proceeding to put their project into execution, and the prisoner had left his dwelling to join his confederates pursuant to the appointment made on the preceding day, approached the place of rendezvous with the bomb in his possession, and was intercepted by the police, he was held properly convicted. The statute in that case provided that "any person who attempts to maliciously place an obstruction upon the track of a railroad," etc. *People* v. *Stites*, 75 Cal. 570. See, also, *People* v. *Mann*, 113 Cal. 76. Where one had taken an impression of a key to a warehouse, and prepared a false key, which he had in his possession, with the intent to break and enter, he was held properly convicted under a statute identical with this. *Griffin* v. *State*, 29 Ga. 493.

The cases upon this subject are very numerous, and undoubtedly many might be cited from which it might fairly be inferred that the courts which decided them might hold that the acts in this case were too remote, and constituted merely a preparation, which the law does not recognize and punish as criminal. One of the strongest cases cited is *People* v. *Murray*, 14 Cal. 159, where it was held that an attempt to commit an incestuous marriage was not established by an elopement for the

avowed purpose, and the request to another to go for a magistrate to perform the ceremony. It was also said that the attempt could only be consummated by engaging the officer to perform the ceremony, with the parties standing before him to take the vows preparatory to the contract of marriage. The statute in that case is not stated in the opinion. Bishop, in speaking of this case, says, "We cannot safely assume that it will be followed by all courts." 1 Bish. New Cr. Law, § 764. I cannot yield it my assent.

In *Reg.* v. *McCann*, 28 U. C. Q. B. 514, three entered into conspiracy to commit burglary. One was kept away by his father, who had discovered their design. The other two ( the prisoners ) went to within about 14 feet of the house, stood outside of the fence awhile, and then went away. It might well be held in that case that there was no attempt, on the ground that they had abandoned their intent to commit the crime. The court said :

"The bare fact that the prisoners were seen looking at the house at the distance of 13 or 14 feet is not of itself a crime, and, although it may be said they were near the premises upon the understanding previously entered into, yet there is no evidence of the fact. For all that appears, they may have changed their minds, and, in the absence of their comrade, went there with some other object, or for some other purpose, and not with the intent charged."

We are also cited to *Hicks* v. *Com.*, 86 Va. 223 ( 19 Am. St. Rep. 891 ). In that case the prisoner was charged with an attempt to administer poison, by soliciting one Laura Long, for a promised reward, to administer the same, and that the poison was delivered to her. The court said, "It was not charged that she agreed to administer the poison, or that she did any act towards the commission of the crime." On the contrary, she testified that she never did agree to administer it, and never intended to; that she wanted to fool Hicks, because she wanted to catch him, and to let other people know it. One justice dissented.

Under a statute identical with ours, on a charge of an attempt to commit incest, mere solicitation was held insufficient; and the court say:

"The statute must be construed, in cases like the present, to mean a physical act, as contradistinguished from a verbal declaration; that is, it must be a step towards the actual commission of the offense, and not a mere effort, by persuasion, to produce the condition of mind essential to the commission of the offense." *Cox* v. *People*, 82 Ill. 191.

Counsel says that though one may intend to commit a crime, and do many things towards its commission, yet he may repent, and the law gives to him a *locus pœnitentiæ.* But where is this *locus?* Is it at the window which he proposes to enter? or at the gate to the inclosure of the dwelling? or at the dividing line between the public highway and private property? How much distance and time does the law give him to repent? Conversions like that of Paul are rare, especially among criminals. The law will not "o'erleap itself" to find a time and place for repentance, when the criminal has started forth, armed and equipped to carry out his felonious intent. It may refuse conviction when repentance and abandonment are shown, but not till then. The only reasonable and just rule, in my judgment, is that when one has prepared himself with weapons and tools for the purpose of accomplishing a crime, and has started out to accomplish it, the offense is complete, unless it is shown, as was the case in *Reg.* v. *McCann*, 28 U. C. Q. B. 514, that he had abandoned his purpose. It would be difficult, if not impossible, to harmonize all the cases. No two are alike in their facts. In the case before us, the plan was perfected. All the preparations were made for carrying it out. The respondent left his home, with the revolver and slippers; had traveled nine miles towards the place; had then provided himself with chloroform, and loaded his revolver; had met his supposed co-conspirator at the place of rendezvous. All these acts were done for the express purpose of committing

the crime, and he was prevented from the commission by his arrest. I think that the steps taken constitute something more than a bare preparation, and were acts towards the commission of the crime, within the meaning of the statute.

The conviction should be affirmed.