[Crim. No. 2867.   Third Dist.   Nov. 12, 1958.]

THE PEOPLE, Respondent, v. MORAH CLONINGER, Appellant.

Robert H. Trombley, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and William O. Minor, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—Appellant appeals from a judgment following a verdict by a jury finding him guilty of attempted burglary in the first degree and from an order denying a new trial. The information charged that he committed that offense in that "on or about the 18th day of January 1958, . . . he did wilfully attempt to enter the building, to wit: an eight by ten foot building located on the David Peebles property . . . with the intent then and there to commit theft."

By this appeal the appellant challenges the sufficiency of the evidence to sustain the verdict and judgment. The record shows the following: Appellant had worked as a handyman on the Peebles ranch during 1956. There is a building on the ranch known as the gun room, which contains guns, scabbards, fishing equipment, a reloading outfit, shells, cartridges and other property. The equipment in the gun room is worth thousands of dollars and the building is usually kept locked. Appellant had no permission to enter it, and at the time of the incident here under review had been discharged from his employment. On January 6, 1958, the appellant met one Calvin Hudson in Sacramento and sought to interest him in stealing property from the ranch. · He told Hudson that besides the guns and such related articles, there was a safe on the ranch with fifty or sixty thousand dollars in it. He said he wanted Hudson to stand watch and that he, appellant, would make Peebles open the safe; that if he refused to open it he would mutilate him; that he would stick him in the leg about an inch and a half to let Peebles know he "meant business." Hudson reported the conversation to police officers and they told him to go along with appellant's proposals. On two separate occasions the two men drove to the ranch, but did not attempt the burglary. On a third occasion they stopped the car on the ranch, appellant changed his clothes and put on gloves, and said "let's go," adding, "I'm going to go for broke." As appellant approached the gun room he was carrying a hatchet and had an open knife in his pocket. On his way out to the ranch he told Hudson that if he found Mr. and Mrs. Peebles in bed he was going to tie them up and was then going to "use" Mrs. Peebles. Two officers were in the gun room as appellant approached. They saw him come up to the door carrying the hatchet. From inside the officers heard a sound like metal striking on metal, which one of them described as resembling a hatchet hitting the lock. Appellant stepped back from the door, turned the

light he carried toward the window of the room, and the officers, believing they had been seen, opened the door. Appellant fled. He was overtaken. He had thrown the hatchet away, but still had the opened knife in his pocket. He made statements to the officers that he went to the ranch with the intent of burglarizing the place, picking up anything he could get his hands on to turn into money. Hudson testified that appellant told him he was going to the gun room to get a gun so that if he saw anybody around the phone he would have something in his hands he could "do business with."

■ Burglary is the entry into a building with intent to commit theft or any felony. ■ An attempt is committed by a direct but ineffectual act toward the commission of the burglary, coupled with the specific intent to commit the burglary. (*People* v. *Miller*, 2 Cal.2d 527 [42 P.2d 308].)

■ The intent may be inferred from the circumstances. We hold the evidence clearly sufficient to sustain the verdict that appellant had been guilty of an attempt to commit burglary.

■ Appellant contends that the evidence is insufficient to establish burglary in the first degree in that it does not show he was armed with a deadly weapon. But he was carrying a hatchet, as he approached the door of the gun room. He was also carrying an open pocket knife. He had made threats to use these weapons if his operations were interfered with or resisted. ■ A deadly weapon is one likely to produce death or great bodily injury. (*People* v. *Fuqua,* 58 Cal. 245; *People* v. *Cook,* 15 Cal.2d 507 [102 P.2d 752].) If it appears that the instrumentality is capable of being used in a deadly or dangerous manner and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be thus established, at least for the purposes of that occasion. (*People* v. *Morlock,* 46 Cal.2d 141, 145-146 [292 P.2d 897].) The evidence in this case measures up to the test laid down in the cases cited. ■ Appellant had clearly expressed his intent to use the hatchet and the knife during the commission of burglary which he intended to commit, if the occasion should arise. He, therefore, was armed with a deadly weapon, both the hatchet and the knife being such under the circumstances.

Appellant complains that he ought not to have been declared an habitual criminal. Although two prior felonies

were charged and he admitted their commission, no pronouncement of habitual criminality was made.

There is no merit in the appeal.

The judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.