PEOPLE *v.* BOWEN.

SAME *v.* ROUSE.

OPINION OF THE COURT.

**1. LARCENY—ELEMENTS OF ATTEMPTED LARCENY.**

The elements of attempted larceny are a felonious intent to commit larceny and an overt act going beyond mere preparation towards the commission of the crime (CL 1948, §§ 750.92, 750.360).

**2. TRIAL—ATTEMPTED LARCENY—JURY'S FUNCTION.**

The jury's function in a trial for attempted larceny in a building is to weigh the evidence and to determine whether a felonious intent to commit larceny is manifest, and in doing so the jury may draw reasonable inferences from the facts (CL 1948, §§ 750.92, 750.360).

**3. WITNESSES—LEADING QUESTIONS—DISCRETION OF COURT.**

Permitting the prosecution to ask leading questions of 80-year-old complaining witness in a trial for attempted larceny in a building *held*, not an abuse of discretion (CL 1948, §§ 750.92, 750.360, 768.24).

---

* Continued from volume 9 Mich App.

REFERENCES FOR POINTS IN HEADNOTES

[1] 32 Am Jur, Larceny § 10 *et seq.*
Intent to convert property to one's own use or to the use of third person as element of larceny. 12 ALR 804.
Attempts to commit offenses of larceny by trick, confidence game, false pretenses, and the like. 6 ALR3d 241.
[2, 6] 32 Am Jur, Larceny §§ 149, 150.
[3] 58 Am Jur, Witnesses § 570.
[4] 32 Am Jur, Larceny § 153.
[5, 7, 8, 10, 11, 13, 21–23] 32 Am Jur, Larceny § 90.
[9, 12] 32 Am Jur, Larceny § 36.
[14, 15, 20] 53 Am Jur, Trial § 511.
Duty in instructing jury in criminal prosecution to explain and define offense charged. 169 ALR 315.
[16] 53 Am Jur, Trial § 1056.
[17] 53 Am Jur, Trial § 1005.
[18, 19] 5 Am Jur 2d, Appeal and Error § 894.

4. LARCENY—ATTEMPT—INSTRUCTIONS—OVERT ACT.

Conviction of attempted larceny in a building *held*, error, where trial judge failed to instruct jury on necessity of finding an overt act and incorrectly charged jury that it could convict if it found defendants came to or entered house of complaining witness with the intention of committing larceny (CL 1948, §§ 750.92, 750.360).

5. SAME—ATTEMPTED LARCENY—OVERT ACT.

The mere coming to or entering of a house by defendants, charged with attempted larceny in a building, *held*, not an overt act towards commission of the crime, where 1 defendant had rightfully been in the house on prior occasions and where defendants were admitted to the house on the night in question by the person who lived there (CL 1948, §§ 750.92, 750.360).

6. SAME—ATTEMPTED LARCENY—QUESTION OF FACT—QUESTION OF LAW.

Whether defendants, charged with attempted larceny in a building, entered a house with a felonious intent is a question of fact to be decided by the jury, but whether the facts found by the jury constitute an overt act or whether the jury from particular circumstances could find that an overt act had been committed is a question of law to be decided by the court (CL 1948, §§ 750.92, 750.360).

7. CRIMINAL LAW—ATTEMPT.

A defendant may not be convicted of an attempt to commit a crime unless he has gone beyond acts of an ambiguous nature or those that are equivocal.

8. SAME—ATTEMPT—OVERT ACT.

The function of the overt act, required to be shown to prove attempt to commit a crime, is not to corroborate the existence of felonious intent in the actor's mind because not every felonious intention is punishable, but rather to demonstrate that the actor has converted his felonious resolution into punishable action (CL 1948, § 750.92).

9. SAME—INTENT.

The law does not punish evil intent or even every act done with the intent to commit a crime.

10. SAME—ATTEMPT—OVERT ACT.

The overt act required to be shown to prove attempt to commit a crime is not any act, but an act which manifests, or is symbolic of, the crime (CL 1948, § 750.92).

11. SAME—LARCENY—ATTEMPT—OVERT ACT—ENTRY OF HOUSE.

Entry of complaining witness' house, upon her admitting them, by defendants who had been in the house before to do various jobs as handymen and who on the occasion of this entry sought to hire themselves out to clean and do masonry work on chimney *held,* not to be an overt act manifesting or symbolizing the crime of larceny in a building which defendants were later convicted of attempting as a result of their actions in the house (CL 1948, §§ 750.92, 750.360).

12. SAME—INTENT—ATTEMPT.

The mere intent to commit a crime is not a crime; an attempt to perpetrate it is necessary to constitute guilt in law (CL 1948, § 750.92).

13. SAME—INTENT—OVERT ACT.

Entry or attempted entry upon the victim's premises may be sufficient to constitute an overt act which is necessary for a finding of attempted larceny in a building, where such entry or attempted entry has been without permission or where the defendant came armed or with burglary tools or other means of committing the crime (CL 1948, §§ 750.92, 750.360).

14. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS—REQUEST TO CHARGE.

The trial judge has the duty to charge the jury as to the law applicable to a criminal case, even in the absence of a request to charge, and his failure to do so constitutes reversible error.

15. CRIMINAL LAW—INSTRUCTIONS.

The trial judge in a criminal case has a nondelegable duty to instruct the jury on the facts the jury must find to justify conviction.

16. SAME—GENERAL VERDICT.

A general verdict of guilty rendered by a jury in a criminal trial means guilty as charged by the court.

17. SAME—GUILTY VERDICT—PRESUMPTIONS.

A guilty verdict is a solemn declaration that the jury has found those facts which the judge instructed the jury it must find in order to render such a verdict, and there is no assumption or presumption that the jury has also made findings concerning an element of the crime not submitted or not properly submitted to it for consideration.

DISSENTING OPINION.

LESINSKI, C. J.

18. APPEAL AND ERROR—REVIEW OF INSTRUCTIONS.

Court of Appeals, in reviewing instructions given by the trial court, is bound to review the entire charge to the jury to determine if error of instruction occurred.

19. SAME—FAILURE TO INSTRUCT JURY.

Claim of defendants that trial court committed error by failing to instruct the jury as to the necessary elements of an attempt to commit larceny in a building held, without merit, where a reading of the charge reveals that instructions given were adequate and contained no error (CL 1948, §§ 750.92, 750.360).

20. CRIMINAL LAW—JUDGE MUST APPRISE JURY OF ELEMENTS OF THE CRIME.

The trial judge has a duty to apprise the jury in sufficient language of the essential elements of the crime charged.

21. SAME—OVERT ACTS.

No obligation exists on the part of the trial judge to characterize elements of a crime as overt acts if he sufficiently states the acts required to constitute overt acts.

22. LARCENY—ATTEMPTED LARCENY IN A BUILDING.

The prosecution is not required to show in a trial for attempted larceny in a building that the attempt was to get the property out of the building (CL 1948, §§ 750.92, 750.360).

23. SAME—ATTEMPTED LARCENY—FELONIOUS INTENT.

The trial court in trial for attempted larceny in a building properly instructed the jury that if the attempt to take the property was for an instant and with a felonious intent, that is, wrongfully to deprive the owner of his property, the attempt to commit a larceny was complete (CL 1948, §§ 750.92, 750.360).

See headnotes 1–3.

Appeal from Recorder's Court of the City of Detroit; O'Hara (John P.), J. Submitted Division 1 January 5, 1967, at Detroit. (Docket No. 1,361.) Decided March 22, 1968.

Sherrell Bowen and William T. Rouse were convicted of attempted larceny in a building. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olson,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Talbot M. Smith,* for defendants.

LEVIN, J. Defendants, Sherrell Bowen and William T. Rouse, appeal their convictions of attempted larceny in a building.

On January 19, 1965, at approximately eight o'clock p.m., the defendants and two female companions were admitted to the home of one Matilda Gatzmeyer, an 80-year-old woman. The defendants' car was observed parked in front of Miss Gatzmeyer's residence and a neighbor, believing the defendants to have designs upon her property, called the police. Two police officers arrived and entered the home along with the neighbor.[1] The defendants were found in the rear of the house near or on the basement steps. The two female companions were seated on either side of Miss Gatzmeyer, apparently engaged with her in conversation. The bedroom of the house was in a state of disarray.

The police ordered defendants to come to the front of the house and sit in the living room. Defendant Rouse seated himself within a foot of the TV, and some time thereafter one of the police

---

[1] At the trial Miss Gatzmeyer, the neighbor and the police officers testified. The defendants did not testify and the prosecution stated it had been unable to subpoena the female companions.

officers spotted under the TV set two rings belonging to Miss Gatzmeyer. The neighbor testified she found a necklace on the staircase near where defendant Bowen had been standing when he was first sighted by the police. When the neighbor's discovery was called to the attention of one of the police officers, he and Miss Gatzmeyer went to the staircase and found the necklace in that location.

After interrogation, the defendants were arrested and charged with larceny of "rings and a necklace" in a building in violation of CL 1948, § 750.360 (Stat Ann 1954 Rev § 28.592).

Bowen had been to the Gatzmeyer home on a number of prior occasions, ostensibly as a handyman, the same reason he gave Miss Gatzmeyer for appearing on the night in question. Miss Gatzmeyer testified that on this occasion the defendants sought to hire themselves out to clean and to do some masonry work on the chimney. She complained about the high prices charged by Bowen and his failure to do work as agreed, and that Bowen's helper (the role allegedly filled by Rouse at the time of the incident) generally helped himself to things that belonged to her.

The neighbor testified that she had met Bowen on three occasions prior to the one in question and that on one occasion Bowen had induced Miss Gatzmeyer to go with him to the bank, but it was not clear whether the visit to the bank was to withdraw money to pay Bowen that which was due him or unlawfully to separate Miss Gatzmeyer from her money.

The neighbor testified that she visited with Miss Gatzmeyer daily and assisted her in various chores and generally in getting around. She stated that when she and the police officers arrived on the night in question the dresser drawers in the bedroom were all pulled out and everything thrown

all over the bed. This was not the way Miss Gatz-
meyer generally kept the house according to the
neighbor: "She has a very neat house, everything
is in its place." The neighbor further testified that
"after Miss Gatzmeyer cleaned up (presumably
after the police left) she found more jewelry back
of the pillows" on the couch Bowen sat on during
his interrogation by the police.

Miss Gatzmeyer testified that the defendants re-
moved the jewelry from her bedroom without her
consent.

At the beginning of his charge to the jury, the
trial judge stated that because he doubted whether
the case properly could be submitted to the jury on
the original charge of larceny in a building he had
decided to submit it to the jury solely on the in-
cluded offense of attempt to commit larceny in a
building.

I.

There was sufficient evidence to support the de-
fendants' conviction of attempt to commit larceny.
The jury could properly infer from the testimony
that the defendants did in fact ransack Miss Gatz-
meyer's bedroom and furniture without her permis-
sion, and remove the 2 rings which were found under
the TV set and the necklace found on the staircase.
Such a finding would justify conviction of attempted
larceny, the elements of which are a felonious in-
tent to commit larceny (*People* v. *Hillhouse* [1890],
80 Mich 580) and an overt act going beyond mere
preparation towards the commission of the crime
(*People* v. *Youngs* [1899], 122 Mich 292 [47 LRA
108]; *People* v. *Coleman* [1957], 350 Mich 268,
276).[2]  It is the jury's function to weigh the evi-

---

2 "Any person who shall attempt to commit an offense prohibited
by law, and in such attempt shall do any act towards the commission
of such offense, but shall fail in the perpetration, or shall be inter-

dence and to determine therefrom whether such intent is manifest (*People* v. *Hillhouse, supra,* p 587), and in doing so the jury may draw reasonable inferences from the facts (*People* v. *O'Hara* [1936], 278 Mich 281, 302; *People* v. *Davis* [1922], 217 Mich 661, 668).

The trial judge did, as defendants assert, permit the prosecution to lead Miss Gatzmeyer freely in her testimony. Examining the record carefully, and under the somewhat unusual circumstances presented, we do not find an abuse of the discretion confided to the trial judge in that regard.

"Within the discretion of the court no question asked of a witness shall be deemed objectionable solely because it is leading." CL 1948, § 768.24 (Stat Ann 1954 Rev § 28.1047)

## II.

We do find error in the judge's failure properly to charge the jury on the necessity of finding an overt act.[3] It has been said that the overt act "is

cepted or prevented in the execution of the same, when no express provision is made by law for the punishment of such attempt, shall be punished as follows: * * *." CL 1948, § 750.92 (Stat Ann 1962 Rev § 28.287).

[3] The trial judge charged concerning the elements of the originally charged principal offense, and stated that the case would be submitted on the question whether the defendants had attempted to commit the principal offense, but did not anywhere in his charge define the elements of an attempt:

"In order to constitute the offense of larceny, the following elements must be established. In this case, what you will have before you, is an attempt to do these things: (1), an actual taking of the property; (2), a carrying away; (3), the taking or carrying away with a felonious intent; (4), the property which it was attempted to take must be the personal property of another, and (5), the taking must be without the consent of the owner.

"On the matter of larceny, any removal of goods from the place where they had been left by the owner, so that the person taking them, if only for an instant, has them entirely in his possession, is sufficient carrying away if the taking is with a felonious intent; that is, to wrongfully deprive the owner of the property."

the essence of the offense"[4] or the "gravamen of the offense."[5]   Not only did the trial judge fail to charge the jury at all concerning the necessity of finding an overt act, but he also incorrectly charged that the jury could convict if it found that the defendants came to or entered Miss Gatzmeyer's house with the intention of committing larceny.

During the charge, the trial judge stated:

"The theory of the people is that the evidence in this case, that is, the age of the complainant, Miss Gatzmeyer, the lateness of the visit to the house, the presence of two women to talk to the complainant, and the condition of the bedroom which it is claimed indicated ransacking and the attempt of the defendants to hide when the police were called, bear upon and indicate that the two defendants *came there with the intention* of committing larceny in the dwelling.   The offense of larceny isn't clear but the attempt to commit larceny, it is charged by the people, represented by Mr. Mazer, is clear.

"Now, the defense is rather brief and that is that the testimony given here does not tend to prove beyond a reasonable doubt that the defendants *entered the place with the intent* or for the purpose of attempting to commit larceny.   In other words, the defense is that the testimony that is shown here is not sufficient to convict the defendants beyond a reasonable doubt of *coming* into that building *or*

---

Gillespie's model instruction on attempt reads:

"(Define principal offense.)   In order to warrant a conviction under this statute something more than an intention or purpose to commit a crime is necessary.   So long as an attempt to commit a criminal act rests in intention only, it is not punishable, but immediately when some act has been done towards its accomplishment an offense is committed under the statute.   Thus, an attempt to commit a crime occurs when a person forms an intention to commit it, and does some direct act towards the *commission of the offense*, but fails or is prevented from fully carrying out his unlawful purpose."   2 Gillespie, Michigan Criminal Law & Procedure, § 1074, p 1463.

[4] *Hyde* v. *United States* (1912), 225 US 347, 388 (32 S Ct 793, 810, 56 L Ed 1114, 1134) (per Holmes, J., dissenting).

[5] *State* v. *Lindsey* (1947), 202 Miss 896, 899 (32 So 2d 876, 877).

*going into the building* on the night in question *with
the intent* to commit larceny." (Emphasis sup-
plied.)

There was ample evidence from which the jury
could have found felonious intent. There are the
circumstances related by the judge in his charge,
as well as the other evidence previously set forth
in this opinion. We must assume that, in convict-
ing the defendants, the jury followed the judge's
instructions and found the requisite felonious intent.

In the absence of a request (see part III of this
opinion), the trial judge's failure to charge the jury
on the necessity of finding commission of an overt
act, as a separate ingredient or element, might not
be error if he were correct in charging the jury
that if it found defendants "came" to or "entered"
Miss Gatzmeyer's house with intent to commit lar-
ceny it could bring in a verdict of guilty. If defend-
ants' coming to, or entering, Miss Gatzmeyer's house
with felonious intent was an "overt act", the jury
verdict of guilty could be viewed as a finding of
the requisite overt act.[6]

Thus, the narrow question before us is whether
the defendants when they came to or entered Miss
Gatzmeyer's house with the intent to commit lar-
ceny committed an overt act that would support
their conviction of attempted larceny. In our opin-
ion, their mere coming to or entry of Miss Gatz-
meyer's house was not an overt act, under the cir-
cumstance that Mr. Bowen and other helpers had
rightfully been in the house on prior occasions and

---

[6] Similarly, if, due to the nature of the record evidence, the jury
could *only* have found the felonious intent from an act which could
properly be designated an overt act, then we might, although there
was a failure to charge regarding overt act, properly conclude that,
having found intent, the jury must have found the overt act as well.
However, in this case the judge charged the jury that it could find
the intent not only from the ransacking, but also from other circum-
stances which did *not* constitute overt acts, *viz.*, the age of Miss
Gatzmeyer and the lateness of the hour.

were admitted to the house by Miss Gatzmeyer on the night in question.

Whether the defendants came to or entered Miss Gatzmeyer's house with a felonious intent is, of course, a question of fact to be decided by the jury. However, whether the facts found by the jury constitute an overt act, or whether the jury from particular circumstances could find that an overt act had been committed, is a question of law to be decided by the court.

In *People* v. *Coleman, supra,* the Supreme Court stated that a defendant may not be convicted of an attempt unless he has "gone beyond acts of an ambiguous nature" or those that are "equivocal",[7] and that a "thoughtful test for the resolution of the equivocal act has been phrased by Turner in his article, 'Attempts to Commit Crimes' in 5 Cambridge LJ 230, 237, 238, in these words:

" 'If the acts of the accused, taken by themselves, are unambiguous, and cannot, in reason, be regarded as pointing to any other end than the commission of the specific crime in question, then they consti-

---

[7] Accord: *State* v. *Mandel* (1954), 78 Ariz 226 (278 P2d 413); *People* v. *Miller* (1935), 2 Cal 2d 527 (42 P2d 308, 98 ALR 913): "so long as the equivocal quality remains no one can say with certainty what the intent of the defendant is"; *Groves* v. *State* (1902), 116 Ga 516 (42 SE 755): "In general, the act must be inexplicable as a lawful act, and must be more than mere preparation."

Other courts have said much the same thing in describing the overt act as one that can have "no other purpose" or "apparent result" than the commission of the principal crime—the "natural and probable" effect test is of the same genre; and then there are the judicial and text statements which speak of the overt act as an act that "commences" or has a "direct tendency" or "sufficient proximity" or "sufficient nearness" to the commission of the principal offense that (some add, having in mind the seriousness and enormity of the principal offense), in the opinion of the court, the actor's purpose is clear. See Keedy, Criminal Attempts At Common Law (1954), 102 Univ of Penn LR 464, 474. Whether the differences in language used by the courts bring about different results or merely permit the courts that speak in terms of proximity or nearness or the like to explain their results with greater ease is beyond the scope of this opinion. On the question before us, we found substantial uniformity in results, if not in their explanation (see footnotes 14–18).

tute a sufficient *actus reus*. In other words, his acts must be *unequivocally referable* to the commission of the specific crime. They must, as the late Sir John Salmond said, "speak for themselves." If the example may be permitted, it is as though a cinematograph film, which had so far depicted merely the accused person's acts without stating what was his intention, had been suddenly stopped, and the audience were asked to say to what end those acts were directed. If there is only one reasonable answer to this question then the accused has done what amounts to an "attempt" to attain that end. If there is more than one reasonably possible answer, then the accused has not yet done enough.' " (p 278.)

Thus, in *People* v. *Miller* (1935), 2 Cal 2d 527 (42 P2d 308) the court held that no one could say with certainty whether the defendant, who was at the time of the alleged offense somewhat under the influence of liquor, had come into a constable's ranch to carry out his threat to kill one of the constable's employees "or merely to demand his arrest by the constable"; the defendant, carrying a loaded rifle, was stopped by the constable, who was between the defendant and the employee, as the defendant walked toward the constable.[8]

It has been suggested that the basic function of the overt act is corroboration of the felonious intent.[9] However, that analysis can become somewhat

---

[8] Compare *Ex parte Turner* (1909), 3 Okla CR 168 (104 P 1071); *Burton* v. *State* (1899), 109 Ga 134 (34 SE 286). See, also, *State* v. *Moore* (1952), 194 Or 232 (241 P2d 455) where defendant's actions while caressing a young lady were held to have fallen far short of constituting attempted statutory rape; similarly, see *State* v. *Lindsey* (1947), 202 Miss 896 (32 So 2d 876); *Gaskin* v. *State* (1898), 105 Ga 631 (31 SE 740). Contrast *People* v. *Johnson* (1901), 131 Cal 511 (63 P 842) and *Glover* v. *Commonwealth* (1889), 86 Va 382 (10 SE 420) where defendant's actions were unambiguous.

[9] "The basic function of the 'act requirement' in the area of attempts is to corroborate clearly the presence of *mens rea* by indicating the earnestness of the actor's intent to commit the offense involved [see Model Penal Code Commentary, Tentative Draft No. 10,

circular if we permit intent to be gleaned from the overt act itself.

The testimony in this case was that defendant Bowen had, on a number of prior occasions, been in Miss Gatzmeyer's house with helpers. With that in mind and even if it be assumed (on the basis of the jury finding) that the defendants entered her house with a felonious intent, their mere presence there did not indicate, let alone "corroborate", that intention. The defendants did not break into Miss Gatzmeyer's house—they were voluntarily admitted by her. At the time of defendants' admission to Miss Gatzmeyer's house their *acts* were entirely "ambiguous" and "equivocal". It is the acts thereafter allegedly committed (but as to which we have no finding from the jury)[10] that were neither ambiguous nor equivocal.

Our analysis of the authorities convinces us that the function of the overt act is not to "corroborate", but rather to demonstrate that the defendant has converted resolution into action. Man being what he is, evil thoughts and intentions are easily formed. Fortunately, for society, most felonious thoughts are not fulfilled. The law does not punish evil

---

pp 39–73]." From the proposed Michigan Revised Criminal Code—Final Draft, September, 1967, p 83. The chief reporter and special consultants on the model penal code collaborated on a comprehensive article which reviews both the common law and the proposed code. Wechsler, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation and Conspiracy, Part 1 (1961) 61 Col LR 571.

[10] The only jury finding before us is a finding that the defendants came to Miss Gatzmeyer's house with a felonious intent. While we proceed on the assumption that in convicting the defendants the jury concluded that the defendants came to or entered Miss Gatzmeyer's house with a felonious intent, we cannot similarly assume that the jury found that the defendants ransacked Miss Gatzmeyer's room or removed her personal belongings from her bedroom or were responsible for the fact that they were found under the TV set or on the staircase, where the only issue submitted to the jury was whether the "defendants *came there* with intention of committing larceny". The jury could have found such *intention* on the basis of evidence other than the ransacking and the atypical locations of some of her personal belongings. (See footnote 4.)

intent[11] or even every act done with the intent to commit a crime. *People* v. *Coleman, supra,* p 276. The requirement that the jury find an overt act proceeds on the assumption that the devil may lose the contest, albeit late in the hour. Compare *Commonwealth* v. *Peaslee* (1901), 177 Mass 267 (59 NE 55).

The overt act is not any act.[12] In this connection "overt" is used in the sense of "manifest"[13] or symbolic. The act must manifest, or be symbolic of, the crime. Considering that Bowen and helpers had been in Miss Gatzmeyer's house on previous occasions (and, whatever her differences with Bowen may have been, she nevertheless again admitted him on the night in question), the fact that the defendants came to and entered Miss Gatzmeyer's house would not manifest or symbolize the crime of which they were convicted of attempting to commit. Compare *Commonwealth* v. *Ellis* (1944), 349 Pa 402 (37 A2d 504), where a male defendant who knew the complaining witness, a female, entered the complaining witness' home after having been asked to leave the premises, the court holding that the commission of an overt act was not made out by the evidence.

In *People* v. *Rizzo* (1927), 246 NY 334, 338, 339 (158 NE 888, 889, 890), the court declared:

"Men would not be guilty of an attempt at burglary if they had planned to break into a building

---

[11] "As the aim of the law is not to punish sins, but is to prevent certain external results, the act done must come pretty near to accomplishing that result before the law will notice it." *Commonwealth* v. *Kennedy* (1897), 170 Mass 18 (48 NE 770); see, also, *State* v. *Hollingsworth* (1893), 15 Del (1 Marv) 528 (41 A 143); *State* v. *Harney* (1890), 101 Mo 470 (14 SW 657).

[12] "The statute does not punish every act done toward the commission of a crime, but only such acts done in an attempt to commit it." *Commonwealth* v. *Peaslee* (1901), 177 Mass 267 (59 NE 55). See, also, *People* v. *Coleman, supra,* p 276.

[13] *Dill* v. *State* (1928), 149 Miss 167 (115 So 203); *People* v. *Murray* (1859), 14 Cal 159, 161.

and were arrested while they were hunting about the streets for the building not knowing where it was. Neither would a man be guilty of an attempt to commit murder if he armed himself and started out to find the person whom he had planned to kill but could not find him. So here these defendants were not guilty of an attempt to commit robbery in the first degree when they [went armed in an automobile in search of a paymaster but] had not found or reached the presence of the person they intended to rob."

Similarly see *State* v. *Rider* (1886), 90 Mo 54, 60 (1 SW 825, 826):

"The mere intent to commit a crime is not a crime. An attempt to perpetrate it is necessary to constitute guilt in law. One may arm himself with the purpose of seeking and killing an adversary, and may seek *and find him,* yet, if guilty of no overt act, commits no crime." (Emphasis supplied.)

Attempt patterns vary widely. No rule can be laid down applicable to all cases. Most cases will in the end turn on their own facts.

"It is a question of degree * * * the degree of proximity held sufficient may vary with the circumstances, including among other things the apprehension which the particular crime is calculated to excite." *Commonwealth* v. *Peaslee, supra,* p 272.

In the last cited case the defendant arranged combustibles in a building, then left the building. Later he set out for the building with the intention of lighting it, but changed his mind and turned back. Held not to be an attempt.

In *People* v. *Pippin* (1946), 316 Mich 191, defendant, who had on a prior occasion been convicted of gross indecency, was found guilty of parole violation on evidence that he had invited a 13-year-old

boy to enter his automobile. The Supreme Court said the question was whether the defendant could be convicted of attempt to commit the crime of gross indecency. The court assumed *arguendo* that intent had been established (just as we assume in this case that the jury found the defendants here before us harbored a felonious intent) but ruled that an overt act had not been established—"the act [committed by Pippin], at most, can be considered no more than preparation for the attempt" (p 195).

In *People* v. *Youngs, supra,* the defendant armed himself with a revolver, purchased cartridges, obtained an armed accomplice, carried slippers to perpetrate a silent entry of the intended victim's house, purchased chloroform to be used in the commission of the crime, and had already set out for the selected scene of the crime when he was arrested. Our Supreme Court reversed the conviction, holding that the defendant had not gone beyond preparation.

In the earlier case of *People* v. *Machen* (1888), 73 Mich 27, defendants were convicted of an attempt to steal property from a lumber office. On appeal, the attorney general confessed error. The Supreme Court added (p 27):

"An inspection of the record shows there was no sufficient evidence given upon the trial upon which a conviction can be sustained."

An inspection of the trial transcript shows the following: Defendants Machen and Stimpson, during an afternoon, made inquiries about purchases in a butcher shop and a hardware store on the east side of Detroit without buying anything. Defendant Scanlan had also been seen in another part of the hardware store at the same time the other defendants had been there. All 3 defendants were seen walking together several times that afternoon. On one of these occasions a policeman saw the 3

defendants approaching a lumberyard together. Scanlan walked across the street and stood while the other 2 entered the office of the lumberyard. The policeman then observed Scanlan walk across the street, look in the office windows, and enter. The policeman followed and discovered Scanlan in the office behind a railing where the office safe was kept. He arrested Scanlan. After entering the office, Machen and Stimpson had expressed to the man in charge an interest in buying cedar posts. They went out the office back door and into the yard with the man in charge, leaving the office empty by the time Scanlan entered. Upon being arrested, Scanlan attempted to flee, and Stimpson resisted briefly. The court charged the jury that it must find an agreement and plan among the defendants to steal from the office, that defendants Machen and Stimpson had pretended they desired to purchase cedar posts to induce the person in charge to leave the office unattended, and that Scanlan had entered the office pursuant to this plan but was interrupted by the arrival of other persons.

Where entry or attempted entry upon the victim's premises has been held in itself sufficient to constitute an overt act, such entry[14] or attempted entry[15] has been without permission, or the defendant has come armed[16] or with burglary tools[17] or other means of committing the crime.[18]

[14] *State* v. *Hollingsworth, supra; State* v. *Thompson* (1909), 31 Nev 209 (101 P 557); *Dooley* v. *State* (1936), 27 Ala App 261 (170 So 96).

[15] *People* v. *Lyles* (1957), 156 Cal App 2d 482 (319 P2d 745); *People* v. *Collins* (1922), 234 NY 355 (137 NE 753); *People* v. *Davis* (1938), 24 Cal App 2d 408 (75 P2d 80); *Putnam* v. *State* (1964), 234 Md 537 (200 A2d 59).

[16] *Stokes* v. *State* (1908), 92 Miss 415 (46 So 627); *People* v. *Parrish* (1948), 87 Cal App 2d 853 (197 P2d 804); *People* v. *Sullivan* (1903), 173 NY 122 (65 NE 989); *People* v. *Anderson* (1934), 1 Cal 2d 687 (37 P2d 67; *People* v. *Moran* (1912), 18 Cal App 209 (122 P 969) and *State* v. *McCullough* (1963), 94 Ariz 209 (382 P2d 682) (in both cases defendants had masks); *People* v. *Du Veau* (1905), 105 App Div 381 (94 NYS 225) (rubber hose with a piece

### III.

Defendants' trial counsel, although given an opportunity to do so, did not object either to the trial judge's failure to charge on the necessity of finding an overt act or to his erroneous, misleading charge that the jury could convict on a finding that the defendants came to or entered Miss Gatzmeyer's house with the intent to commit larceny.

Nevertheless, the Supreme Court of Michigan has declared that, even in the absence of a request to charge, the trial judge has the "duty to charge the jury as to the law applicable to the case, his failure to do so constituting reversible error". *People* v. *Oberstaedt* (1964), 372 Mich 521, 526.

In *People* v. *MacPherson* (1949), 323 Mich 438, 452, the defendant was charged with failing to stop at the scene of an automobile collision. The court failed to charge the jury that the defendant could not be convicted unless he knew, when he left the scene, that his vehicle had been involved in an accident. Although there was no request to so charge, the court ordered a new trial: "The charge of the

---

of lead at the end); *People* v. *Cloninger* (1958), 165 Cal App 2d 86 (331 P2d 441) (hatchet); *State* v. *McCarthy* (1924), 115 Kan 583 (224 P 44) (defendants stopped by police short distance from alleged proposed scene of crime). Contrast *People* v. *Volpe* (1953 Sup), 122 NYS2d 342, where the defendant was not armed, *Ex parte Turner*, *supra*, and *Cornwell* v. *Fraternal Accident Association of America* (1896), 6 ND 201 (69 NW 191), where the defendant was armed.

[17] *People* v. *Gibson* (1949), 94 Cal App 2d 468 (210 P2d 747); *People* v. *Sullivan*, *supra*; *Putnam* v. *State*, *supra*; *Groneau* v. *State* (Fla App 1967), 201 So 2d 599, 603.

[18] *State* v. *Mazzadra* (1954), 141 Conn 731 (109 A2d 873) (striking gas company employees, carrying pipe cutting tools, were found during an early morning hour on a bridge beneath which gas pipes were run); *People* v. *Gibson*, *supra*; *People* v. *Collins*, *supra*; *State* v. *McCarthy*, *supra*; *People* v. *Stites* (1888), 75 Cal 570 (17 P 693) (carrying bomb to railroad track when apprehended). Contrast *Commonwealth* v. *Eagan* (1899), 190 Pa St 10 (42 A 374) (defendant's acts in going to intended robbery victim's home and preparing the rope to tie victim and lying in wait did not go beyond "mere preparation").

trial court stating some of the elements of the offense involved in the case, without reference to others, would have a natural tendency to cause a jury to believe that those stated were exclusive." In the case before us, the trial judge not only failed to charge concerning the necessity of finding an overt act, but also erroneously charged that the jury could convict if it found the defendants came to or entered Miss Gatzmeyer's house with the intent to commit larceny.

In *People* v. *Guillett* (1955), 342 Mich 1, 7, 8, the judge instructed the jury that evidence of intoxication had absolutely no bearing on whether defendant could be convicted of assault with intent to commit rape.    The Supreme Court held the charge erroneous because the jury could not convict if it were to find the defendant's mental faculties so overcome by intoxication as to render him incapable of entertaining the specific intent required of the crime charged, and, even without a request to charge, a case may be reversed because the judge "omits a legally essential ingredient" or "because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point."[19]

It is the trial judge's nondelegable duty to instruct the jury on the facts the jury must find to justify conviction.    Thus, in a very real sense, when a jury renders a general verdict of guilty that verdict means guilty as charged by the court.    A guilty

---

[19] Compare *People* v. *Liggett* (1967), 378 Mich 706, 715, 717.    In that case the error did not relate to a legally essential element of the crime.    Rather, there was considerable confusion in the trial judge's recital of the facts to the jury.    The Supreme Court applied a reasonable doubt standard in resolving whether the misdirection of the jury was harmless or reversible error.    See, also, *People* v. *Kanar* (1946), 314 Mich 242, 253 where the court observed:    "The rule is well settled in this State that if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge such error must be regarded as prejudicial."

verdict is a solemn declaration that the jury has found those facts which the judge has instructed the jury it must find in order to render such a verdict. While it may ordinarily be assumed that in rendering a guilty verdict the jury has followed the judge's instructions, there is no basis for an assumption, let alone a presumption, that the jury has also made findings concerning an element of the crime not submitted or not properly submitted to it for consideration. To be valid, such an assumption or presumption must presuppose that the 12 members of the jury had a better understanding of the applicable law than that manifested by the trial judge who omitted to charge, or gave an erroneous or misleading charge, as to that element of the crime.

Where, as here, the charge omits a legally essential ingredient, or is erroneous or misleading concerning an essential element, the general verdict of guilty convicts the defendant on the basis of either inadequate or irrelevant fact findings and, thus, convicts the defendant of a crime unknown to the laws of our State. Error of counsel does not foreclose relief to his clients in such a case.

Reversed and remanded for a new trial.

HOLBROOK, J., concurred with LEVIN, J.

LESINSKI, C. J. (*dissenting*). In reviewing instructions given by the trial court in a charge to the jury, we are bound to review the entire charge to determine if error of instruction occurred.

Defendants assign as error the trial court's failure to instruct the jury as to the necessary elements of an attempt to commit larceny. More specifically, they assert that the trial court failed to apprise the jury that there must have been an *overt act* on the part of the defendants to carry *from the*

building personal property belonging to the complainant.

A reading of the charge reveals that the instructions given were adequate and contained no error. The duty of the trial judge, among others, is to apprise the jury, in sufficient language, of the essential elements of the crime charged.

In part, the court charged as follows:

"In order to constitute the offense of larceny, the following elements must be established. In this case, what you will have before you, is an attempt to do these things: (1), an actual taking of the property; (2), a carrying away; (3), the taking or carrying away with a felonious intent; (4), the property which it was attempted to take must be the personal property of another, and (5), the taking must be without the consent of the owner.

"On the matter of larceny, any removal of goods from the place where they had been left by the owner, so that the person taking them, if only for an instant, has them entirely in his possession, is sufficient carrying away if the taking is with a felonious intent; that is, to wrongfully deprive the owner of the property."

There is no obligation on the part of the trial judge to characterize elements of a crime as *overt acts* if, in fact, he sufficiently states the acts required to constitute overt acts.

In instructing the jury that it was necessary to have an attempt at the actual taking, carrying away with felonious intent the property of another without the consent of the owner, the court properly advised the jury that more than a mere intention to commit the crime was required. The court effectively instructed the jury that it must find acts toward fulfillment of an evil intent for it to find the defendant guilty of the offense charged.

The writer does not find the law of Michigan to be that it was necessary for the prosecution to show that the attempt was to get the property *out* of the building. The court properly instructed the jury that if the attempt to take the property was for an instant and with a felonious intent, that is, wrongfully to deprive the owner of his property, the attempt to commit a larceny was complete.

Although it may have been more illuminating to the jury to rephrase the charge to indicate that mere felonious or evil intent is not enough to constitute an attempt, in view of the total charge, it was not error not to do so. The charge as given cannot properly be read to suggest to the jury that this was all they needed to find.

The writer agrees with the statement of law and conclusions found in section I of Judge LEVIN's opinion.

I would vote to affirm.