PEOPLE v. JONES.

CRIMINAL LAW—ASSAULT WITH INTENT TO KILL—EFFECT OF INTOXICATION ON INTENT—TRIAL—INSTRUCTION—SUFFICIENCY.

In a prosecution for assault with intent to kill, where the defense was that defendant was so intoxicated as to be incapable of forming and entertaining an intent to kill, an instruction by the trial judge "that voluntary drunkenness is not an excuse for crime in this State. In other words, a man has not the right to indulge in the consumption of intoxicating liquor until he has reached a certain mental stage where he has not full control of his mental faculties and slay his enemy and be excused under the law.    However, the law of this State requires every man to have sufficient control of his mental faculties

Authorities discussing the question of intent in homicide by intoxicated person are collated in notes in 36 L. R. A. 470; 52 L. R. A. (N. S.) 230.

when he commits a crime so that he is able to distinguish right from wrong," *held,* insufficient to properly present the question of intent.[1]   BIRD and MOORE, JJ., dissenting.

Error to recorder's court of Detroit; Heston (William M.), J.   Submitted June 13, 1924.   (Docket No. 92.)   Decided October 6, 1924.

Walter Jones was convicted of an assault with intent to kill and murder, and sentenced to imprisonment for not less than 20 nor more than 40 years in the State prison at Marquette.   Reversed.

*Edward G. Kemp,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *W. McKay Skillman,* Assistant Prosecuting Attorney, for the people.

MCDONALD, J.   The defendant was convicted of an assault with intent to kill one Mabel King on the 28th day of August, 1922, at her home in the city of Detroit.   The people's testimony tends to show that he went to her home on August 27, 1922, and remained there all night; that he slept late and that when Mrs. King went to his room to call him he wanted her to get into bed with him; that when she refused he said, "Do you know who I am?   I am the Magnate, the Black Sheik;" that he then attacked her with a knife; that she escaped out of the room; that after he had dressed he went downstairs and renewed the attack, chased her about the house and declared he would kill her; that during the assault he repeatedly stabbed her in the side, abdomen and hip, and bit her about the shoulders.

The defendant testified that Mabel King kept a sporting house; that he went to her place the night

[1]Homicide, 30 C. J. § 614.

before the alleged assault and there drank intoxicating liquors to such an extent that he was unable to handle himself, and that the women put him to bed; that the following day about noon Mabel King and another woman came to his room with gin and absinthe of which he drank; that he then bought drinks and was furnished with more liquor; that he became so intoxicated that he remembers nothing of the succeeding events. Other testimony tended to show that when he arrived at his rooming house he was "crazy drunk" and was sick for a couple of days thereafter. In short, it was the defendant's claim that he was unconscious of the assault, that he was in such a state of intoxication as to be incapable of forming and entertaining an intent to kill.

The one error assigned relates to the following instruction to the jury on the question of intoxication:

"Now, the defense in this case, as I understand it, gentlemen of the jury, is temporary insanity, or mental derangement, brought on by the over indulgence in intoxicating liquor. I charge you, gentlemen of the jury, that voluntary drunkenness is not an excuse for crime in this State. In other words, a man has not the right to indulge in the consumption of intoxicating liquor until he has reached a certain mental stage where he has not full control of his mental faculties and slay his enemy and be excused under the law. However, the law of this State requires every man to have sufficient control of his mental faculties when he commits a crime so that he is able to distinguish right from wrong."

This instruction does not fully and correctly state the law in regard to the effect of intoxication in cases where a particular intent is an essential element of the crime. The jury should have been instructed in accordance with the following rule announced in *Roberts* v. *People*, 19 Mich. 401, 418:

"If his mental faculties were so far overcome by the intoxication that he was not conscious of what he was

doing; or if he did know what he was doing, but did not know why he was doing it, or that his actions and the means he was using were naturally adapted or calculated to endanger life or produce death, then he had not sufficient capacity to entertain the intent, and in that event they could not infer that intent from his acts. But if he knew what he was doing, why he was doing it, and that his actions with the means he was using were naturally adapted or likely to kill, then the intent to kill should be inferred from his acts in the same manner and to the same extent as if he was sober."

In the instant case the court left it to the jury to determine the defendant's intent from his acts without sufficiently and properly instructing them as to the effect of his intoxication. We think that this was error for which the conviction must be reversed.

The conviction is reversed, and the defendant is granted a new trial.

CLARK, C. J., and SHARPE and FELLOWS, JJ., concurred with McDONALD, J. STEERE and WIEST, JJ., concurred in the result.

BIRD, J. (*dissenting*). I am of the opinion that the grounds for reversal relied upon are not sufficient. The judgment for conviction should be affirmed.

MOORE, J., concurred with BIRD, J.