## PEOPLE *v.* PEARSON.
### Opinion of the Court.

1. Criminal Law—Instructions to Jury—Information—Verification—Reading.

    Reading prosecutor's verification of information by trial court as part of his charge to the jury in murder case, *held*, not to be reversible error, since it may be assumed that the jury understood the reading to be merely a statement of a formal charge and not an approval by the trial court (CL 1948, § 750.317).

2. Same—Instructions to Jury—Elements of Crime.

    Trial judge should instruct the jury in a criminal case as to general features of the case, define the offense, and indicate that which it is essential to prove in order to establish the offense, even in the absence of a request for such instructions.

3. Same—Self-Defense—Instructions to Jury—Burden of Proof.

    In criminal cases, where the defense is self-defense, the burden of proof is on the people to convince the jury beyond a reasonable doubt that the act was not done in self-defense.

4. Same—Homicide—Instructions to Jury—Self-Defense—Burden of Proof.

    Jury instructions which outlined the law of assault, resistance, protection, force, justification, and belief in danger, and the immediate necessity to act in charge to jury in murder case, *held*, not to have placed burden of proof on defendant to prove the claim of self-defense, where he had raised it, since the trial court also directed the jury that they must be satisfied beyond a reasonable doubt and to a moral certainty that the prosecution had proved its case (CL 1948, § 750.317).

---

References for Points in Headnotes

[1] 53 Am Jur, Trial § 629.
[2] 53 Am Jur, Trial § 639.
[3, 4] 40 Am Jur 2d, Homicide § 249.
[5–12] 21 Am Jur 2d, Criminal Law § 236.

5. JURY—PREJUDICIAL PUBLICITY—NEWSPAPERS—QUALIFICATION OF JUROR.

Juror, although he may have formed an opinion from reading newspaper reports on the case he is to hear, may not be thereby disqualified providing that the opinion is not positive in character, and that he states that he can render an impartial verdict (CL 1948, § 768.10).

6. SAME—PREJUDICIAL PUBLICITY—DUE PROCESS—NEWS MEDIA.

Due process of law has been denied an accused when a court can conclude on an objective basis that an impartial jury was an impossibility because of extensive exposure in the news media (US Const, Am 14).

7. SAME—PREJUDICE—COMMUNITY FEELING—DUE PROCESS.

Due process of law is denied an accused when there is a strong community feeling of prejudgment which makes such a strong impression that it influences or probably could influence the decision of the average man.

8. SAME—PREJUDICE—COMMUNITY FEELING—DUE PROCESS—BURDEN OF PROOF.

Burden of proving a strong community feeling of prejudgment in a criminal case to show impossibility of getting impartial jury is on the challenger.

9. SAME—PREJUDICIAL PUBLICITY—BURDEN OF PROOF—TIMELY OBJECTIONS.

Getting an impartial jury in murder trial where local newspaper printed a statement allegedly made by defendant admitting guilt, which was excluded at the trial, and 3 of the jurors were subscribers to the newspaper, was not an impossibility, since the burden of showing a strong community feeling of prejudgment was not sustained by defendant, precautionary instructions were twice given to the jurors by the trial court to avoid exposure to all media of communication, and no objection to the newspaper publicity was made by defendant (CL 1948, § 750.317).

10. SAME—PRESUMPTION.

That jurors are honorable men and women who abide by their juror's oath and the instruction of the trial court may be presumed until the contrary is clearly shown.

Dissenting Opinion.

T. G. Kavanagh, J.

11. Criminal Law—Homicide—Due Process—Prejudicial Public-
ity.

*Due process of law in murder case required defendant to be
tried before a jury drawn from a community of people who
had not seen or heard an alleged admission of guilt printed
in a local newspaper, where, although the admission was
excluded from evidence at his trial, 3 jurors subscribed to
the newspaper which published the prejudicial statement (CL
1948, § 750.317).*

12. Same — Jury — Instructions — Prejudicial Publicity — Due
Process.

*Warnings, suggestions, and admonitions to the jury by a trial
judge to avoid exposure to all media of communication in
criminal case with no subsequent re-examination to ascertain
the effect, if any, of current reporting of the trial are in-
sufficient guarantee, standing alone, that defendant has not
been denied due process of law.*

Appeal from Oakland, Thorburn (James S.), J.
Submitted Division 2 February 6, 1968, at Lansing.
(Docket No. 2,813.) Decided September 25, 1968.

Alan Ross Pearson was convicted of murder in
the second degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *S. Jerome Bronson,*
Prosecuting Attorney, and *Dennis Donohue,* Chief
Appellate Counsel, for the people.

*Charles J. Porter,* for defendant on appeal.

Corkin, J. On January 19, 1966 the defendant
was found guilty of second-degree murder[1] after
trial by jury. It is claimed on appeal that the trial
court committed reversible error when in reading

[1] CL 1948, § 750.317 (Stat Ann 1962 Rev § 28.549).

the information as part of the instruction he also read the prosecutor's verification contained therein, and that further error was committed by the court in refusing to instruct the jury that they must be convinced beyond a reasonable doubt that the defendant did not act in self-defense. The defendant further contends that he was denied a fair trial because of news items that appeared before and during the trial in the newspaper of general circulation in the area from which the jurors were drawn.

The record shows that the trial commenced on January 11, 1966, and on January 18, 1966, following closing arguments and the court's instructions, the case was submitted to the jury. In the initial stage of the instructions, the court read the information to the jury, including the verification of the prosecutor. Later in the afternoon of the same day, the jury asked for further instructions and the trial court repeated the entire instruction, again reading the information as above noted. No objection was made to the reading of the verification following either charge.

Defendant contends that in reading the verification the trial judge seemingly transmits his sanction to the sworn statement of the prosecutor that he believes the charge set forth in the information. This is grounded on the proposition that the Michigan Supreme Court has found prejudicial error where the prosecutor has made statements to the jury indicating his personal belief in the guilt of the accused; see *People* v. *Quick* (1885), 58 Mich 321, and *People* v. *Hill* (1932), 258 Mich 79.

In *People* v. *Clark* (1954), 340 Mich 411, in the course of his charge to the jury, the trial judge referred to the information, indicating the general nature of the various counts. He further stated that he would not read the information in full, but

permitted the jury to take 3 copies of the information to the jury room without objection by defendant.  In answer to the claim of prejudicial error on appeal, the Court said (pp 415, 416):

"Obviously, even if the judge in his charge had read the entire information, it would have been an impossibility for the jurors to have kept in mind all the provisions of each count.  Undoubtedly the members of the jury understood the purpose for which they were supplied with the copies.  It may be assumed that they understood that the information was merely a statement of the formal charge, and that it was necessary for them to consider the different counts in determining the guilt or innocence of the defendants thereunder.  It is scarcely conceivable that any juror considered the copies furnished as evidence of defendants' guilt.  The omission to charge specifically with reference to the matter, particularly in the absence of a request therefor, did not constitute error."

Under the circumstances of this case, nothing leads us to believe that the jurors did not understand the information as merely a statement of the formal charge.  The record shows that after the usual preliminary remarks the court stated that he would read the information filed in the case and proceeded to do so concluding with the simple statement "That is the information", and then continued the instructions without reference or comment in regard to the information.  To paraphrase the court in *Clark, supra,* it is scarcely conceivable that any juror considered the reading of the entire information as an *imprimatur* by the trial court of the prosecutor's verification of the information.

Although it might be better practice not to read the prosecutor's verification when reading an information to a jury as it would not appear to serve any useful purpose, in our opinion in considering

the entire charge, it can be fairly said that it is not reasonable to suppose that the jury was misled in any manner that would have affected their verdict.

Secondly, the defendant contends that the trial court erred in refusing to instruct the jury that they must be convinced beyond a reasonable doubt that the defendant did not act in self-defense in order to convict the defendant.

On Friday, January 14, 1966, both the prosecution and defense rested their cases. On Monday, January 17, 1966, both sides discussed with the court, in chambers, the charge in its entirety although the discussion is not a matter of record. On Tuesday, January 18, 1966, the charge was given to the jury initially and again, with every comma and period in place, later in the afternoon when further instructions were requested by the jury. Following the second reading of the instructions, defense counsel made objection that there had been no instruction stating that the prosecution had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

It is noted that neither the prosecution nor the defense filed requests that the court instruct the jury on the law in any specific area (GCR 1963, 516.1). Also, following the first delivery of the charge, both prosecution and defense expressed themselves as satisfied, and it was only after the jury had retired to deliberate and following repetition of the charge that the objection was made. Were GCR 1963, 516.2[2] completely controlling, the objection would not have been timely made and that would be an end to the matter.

---

[2] GCR 1963, 516.2: "Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

However, we think it is well-settled law in this State that it is the duty of the trial court, in criminal cases, to instruct the jury as to general features of the case, define the offense, and indicate that which it is essential to prove to establish the offense even in the absence of request. See *People* v. *Liggett* (1967), 378 Mich 706. We must therefore consider the charge in its entirety to determine whether it was substantially correct and not prejudicial to the rights of defendant; *People* v. *Haggai* (1952), 332 Mich 467, and *People* v. *Sura* (1942), 301 Mich 124.

Defendant bases his claim of error on the well-settled law of this State that in criminal cases where the issue of self-defense has been raised, the burden of proof, beyond a reasonable doubt, still rests with the people, and that the burden is not on defendant to satisfy the jury that he acted in self-defense, but rather the people have the burden of showing facts that would convince a jury beyond a reasonable doubt that defendant did not act in self-defense. *People* v. *Statkiewicz* (1929), 247 Mich 260, and *People* v. *Asbury* (1932), 257 Mich 297.

In *People* v. *Hunley* (1946), 313 Mich 688, the request to instruct the jury that the burden was on the people to prove the defendant did not act in self-defense was refused by the trial judge. The appellate Court commented that the judge outlined a "fair charge" making it clear that the presumption of innocence prevailed throughout the case. The Court held that the judge was not obliged to charge specifically that the burden was on the people to prove that the killing was not done in self-defense, and that the charge that the burden of proof was placed on the prosecution to establish the guilt of the defendant beyond a reasonable doubt was sufficient in that it embodied a fair charge to the jury.

In *People* v. *Asbury, supra,* the outlining of the elements of self-defense seemingly put the burden on the defendant to satisfy the jury that he killed in self-defense. The holding in this case was that the erroneous implication generated could not be excused since proper instruction on the burden of proof was omitted. The holding in *People* v. *Statkiewicz, supra,* points out that the Court cleared up the erroneous implication by the general instructions to the jury, so that they could not be misled.

In reviewing the charge to the jury in this case, we note that the court in its two complete instructions to the jury explained the function of the jury and the purpose of the charge, outlined the burden of proof, the presumption of innocence, and defined reasonable doubt. After pointing out that the jury was the sole judge of the credibility of the witnesses, the court discussed the offenses embraced in the information.

In discussing the claim of self-defense, the court properly outlined the law of assault, resistance, protection, force, justification, and belief in danger and the immediate necessity to act. The defendant argues that to approach the problem of self-defense from this angle places, of necessity, the burden of proof on the defendant. In considering the whole charge, we are not led to this conclusion.

After the instruction on the proper weight to be given to defendant's testimony, the court again directed the jury that they must be satisfied beyond a reasonable doubt and to a moral certainty that the prosecution had proved its case. Under the facts, as disclosed by the record, we are convinced that the charge was a fair one and is not susceptible of an interpretation that the burden of proof was placed on defendant to prove the claim of self-defense.

Defendant's claim that he was denied a fair trial because of news stories that appeared in a local newspaper before and during trial is documented by various newspaper clippings made part of the record on appeal.

The news stories disclose that during the preliminary examination July 28, 1965, there was received in evidence a statement allegedly made by defendant to the effect: "There's no use kidding you. I went over to kill him." The following day the statement appeared in an edition of the Pontiac Press in a front page article immediately under a photograph of defendant leaving the Oakland county jail apparently handcuffed to an officer. The bold faced heading of the article read "Suspect Said He Planned To Kill Area Boy—Trooper". At the trial the alleged statement was excluded from evidence on the ground that defendant had not been advised of his constitutional rights before making it. On January 14, 1966, after the statement had been found inadmissible, allusion to the statement appeared in the Pontiac Press in an article which recited the fact that the trial court had ruled the statement inadmissible.

The record shows that at the time of trial the judge excused for cause those jurors who indicated that they had read about the case, and that on January 12, 1966, and again on January 13, 1966, the court gave precautionary instructions to the jurors not to discuss the case with anyone and to avoid any exposure to all media of communication which could in any way affect their judgment.

There was no showing that any of the jurors did in fact read the newspaper articles. However, it would appear from the record that 3 of the jurors were subscribers to the Pontiac Press when the July 29, 1965, article appeared.

It is well settled that the inclusion of jurors who have heard of or have read of the case at bar, without more, does not disqualify them as jurors or deny the defendant a fair trial, *People* v. *Schneider* (1944), 309 Mich 158; *People* v. *Dailey* (1967), 6 Mich App 99, and further we find in statutory language that a juror who has formed an opinion may not be challenged for cause, providing that the opinion is not positive in character, and that the juror states he can render an impartial verdict. CL 1948, § 768.10 (Stat Ann 1954 Rev § 28.1033).

However, decisions defining due process of law, as provided by the 14th Amendment, regarding a fair trial, arrive at the conclusion that due process had been denied when a court can conclude on an objective basis that an impartial jury was an impossibility because of extensive news media exposure, *Marshall* v. *United States* (1959), 360 US 310 (79 S Ct 1171, 3 L Ed 2d 1250); *Irving* v. *Dowd* (1961), 366 US 717 (81 S Ct 1639, 7 L Ed 2d 751); *Rideau* v. *Louisiana* (1963), 373 US 723 (83 S Ct 1417, 10 L Ed 2d 663); *Sheppard* v. *Maxwell* (1966), 384 US 333 (86 S Ct 1507, 16 L Ed 2d 600).

It is our finding that it was not an impossibility in this case to find an impartial jury. Where there is a strong community feeling of prejudgment which makes such a strong impression that it influences or probably could influence the decision of the average man, then due process of law could be denied. The burden of proving these conditions is on the challenger. The burden is not sustained in this case upon the record. We find no proof of prejudgment making such an impression in the community, or that its influence or probable influence would affect the judgment of the average man. The contention that the pretrial publicity denied the defendant due process of law is without merit.

Under recent decisions of the United States Supreme Court, all people and institutions directly concerned with the administration of justice or having an indirect influence on the administration of justice, should be concerned with the probability that prospective jurors cannot remain impartial when exposed to publicity which is patently prejudicial. *Cf. Rideau* v. *Louisiana* (1963), 373 US 723 (83 S Ct 1417, 10 L Ed 2d 663); *Turner* v. *Louisiana* (1965), 379 US 466 (85 S Ct 546, 13 L Ed 2d 424); *Estes* v. *Texas* (1965), 381 US 532 (85 S Ct 1628, 14 L Ed 2d 543).

It is noted that in *Rideau, Turner* and *Estes, supra,* the court did not stop to consider the actual effect of the question, but struck down the convictions on the ground that prejudice was inherent in the practice itself. However, we do not understand this to mean that any prejudicial publicity necessitates the granting of a new trial. The reviewing courts consider the totality of the circumstances, and only where there is a clear probability that the jury was subjected to prejudicial publicity is there found to be an inherent lack of due process.

The record in this case shows that on 2 occasions precautionary instructions were given to the jurors by the trial court to avoid exposure to all media of communication. The next relevant fact is that on January 14, 1966 the article appeared in the newspaper. The record is void of any objection to the article or to the conduct of the trial in reference to the publicity that surrounded it. There has been no showing that any of the jurors were exposed to the publicity or were aware of it, or that the publicity was so pervasive that there was a clear probability that the jury could not remain impartial.

This Court should not find that the jury did not act in a fair and impartial manner based on mere

conjecture that they violated their oath and the admonitions of the trial judge to avoid exposure to all media of communication. It would seem necessary to our system of justice that courts presume that jurors are honorable men and women who abide by their juror's oath and the instructions of the trial judge until the contrary is clearly shown.

Defendant's conviction is affirmed.

QUINN, P. J., concurred with CORKIN, J.

T. G. KAVANAGH, J., (*dissenting*). "Suspect Said He Planned to Kill Area Boy"

"There's no use kidding you. I went over to kill him"

At trial, Alan Ross Pearson claimed that he had acted in self-defense. Yet the prejudicial statements, along with references to a signed confession, found their way into the Pontiac Press before and during the proceedings. The majority finds no probable prejudice. I disagree.

We must assay the publication, in the community in which the trial was held, of statements which the trial court ruled could not be offered as evidence. "[D]ue process of law in this case required a trial before a jury drawn from a community of people who had not seen or heard" such inadmissible evidence. *Rideau* v. *Louisiana* (1963), 373 US 723 (83 S Ct 1417, 10 L Ed 2d 663). The potential for community bias, the probability of prejudice inherent in such a tainted broadcasting has encouraged the United States Supreme Court, in like cases, to lift from defendant the burden of proving actual prejudice of jurors and to place the responsibility of insuring a fair trial where it properly belongs—on every officer of the court. See *Estes* v. *Texas* (1965), 381 US 532 (85 S Ct 1628, 14 L Ed 2d 543);

*Sheppard* v. *Maxwell* (1966), 384 US 333 (86 S Ct 1507, 16 L Ed 2d 600).

We have no assured means of ascertaining the degree of community bias resulting from these publications or the influence such prejudice had on this jury.  We do know that three jurors subscribed to the Pontiac Press which provided coverage of the incident over an eight month period.  The exhibits clearly establish that the community had feelings.[1]  We know that the statements were inadmissible at trial.

A reading of *Rideau, Estes,* and *Sheppard, supra,* convinces us that the probability of prejudice from outside interference requires employment of procedural safeguards to prevent prejudicial publicity where possible[2] or to escape its effects once felt.

"Due process requires that the accused receive a trial by an impartial jury free from outside influence.  Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to insure that the balance is never weighed against the accused.  And appellate tribunals have the duty to make an independent evaluation of the circumstances.  *  *  *

"The courts must take steps by rule and regulation that will protect their processes from prejudicial outside interferences.  Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." *Sheppard, supra,* pp 362, 363.

---

[1] Pontiac Press, August 13, 1965.  Voice of the People (Letters to editor):

"A doctor's family in Waterford grieves because their son was stabbed to death.  Is their grief any less because the parents of the lad who did it are upset?"

[2] See 39 Journal of Criminal Law 234, Criminology and Police Science: The Aftermath of Sheppard.

That which was wholly inadmissible before twelve jurors was twice told to an entire community. Warnings, suggestions, and admonitions to the jury to avoid such outside influences, with no subsequent re-examination to ascertain the effect, if any, of current reporting, are insufficient guarantee standing alone that defendant has not been denied due process of law. The motion for new trial should have been granted.