PEOPLE *v.* KELLEY

Opinion of the Court

1. Criminal Law—Common-Law Crimes—Essential Element—Mens Rea—General Intent.

A trespass was not criminal at common law unless the trespasser entertained that culpable state of mind termed *mens rea,* or general intent, which was an element of every common-law crime.

2. Criminal Law — General Intent — Defenses — Intoxication — Negation of Intent.

An accused's general intent to commit a crime cannot be negatived by evidence that he was intoxicated at the time that the crime charged was committed since voluntary intoxication is no excuse for crime.

---

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 81.
[2, 3, 5, 7, 9–12] 21 Am Jur 2d, Criminal Law § 107.
[4, 6] 46 Am Jur, Robbery § 10.
[5–8, 13] Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.
[14] 21 Am Jur 2d, Criminal Law § 368.
[15] 42 Am Jur, Prosecuting Attorneys § 5.
[16] 20 Am Jur 2d, Courts § 85.
Power of court to prescribe rule of pleading, practice, or procedure. 110 ALR 22, s 158 ALR 705.
[17, 18] 5 Am Jur 2d, Appeal and Error § 545.
[19–21] 5 Am Jur 2d, Appeal and Error § 778.

3. CRIMINAL LAW—SPECIFIC INTENT—DEFENSES—INTOXICATION—NE-
GATION OF INTENT.

An accused's intoxication can be shown to negative specific in-
tent where specific intent is a requisite element of the crime
charged.

4. ROBBERY—DEFINITION—SPECIFIC INTENT—CRIMINAL LAW.

Robbery is a specific intent crime because robbery is nothing more
than larceny committed by an assault upon, or by putting in
fear, the person being robbed and larceny requires a. specific
intent since it consists in the wrongful taking of another's
property with felonious intent (MCLA §§ 750.356, 750.529).

5. CRIMINAL LAW—GENERAL INTENT—VOLUNTARY INTOXICATION—
NEGATION OF INTENT.

Voluntary intoxication may not be shown for the purpose of
proving that a defendant did not entertain the general intent
necessary to commit a crime.

6. ROBBERY—SPECIFIC INTENT—INTOXICATION—NEGATION OF INTENT
—INSTRUCTIONS TO JURY.

Robberty is a specific intent crime, and there was no instructional
error where the trial judge charged that if defendant's mental
faculties were so far overcome by intoxication that he was
not conscious of what he was doing, or he did not know what
he was doing, then he could not entertain the requisite specific
intent and, therefore, could not have committed robbery (MCLA
§ 750.529).

7. CRIMINAL LAW—SPECIFIC INTENT—FORMATION OF INTENT—INTOX-
ICATION.

Voluntary intoxication is a defense to a specific intent crime
unless an accused while sober formed the specific intent to
commit the crime charged.

8. ROBBERY—SPECIFIC INTENT—FORMATION OF INTENT—INTOXICA-
TION—INSTRUCTIONS TO JURY.

An instruction that if defendant knew before he began to drink
that he had a criminal propensity to commit a crime while
drunk, he could be found to have intended to commit armed
robbery while drunk, was error where the prosecution neither
claimed that defendant while sober formed the specific intent
to commit armed robbery nor was defendant's case submitted
to the jury on that theory.

9. CRIMINAL LAW—SPECIFIC INTENT—INTOXICATION—CRIMINAL PRO-
PENSITY.

Prior knowledge by a defendant that he has a propensity to
commit some crime while intoxicated cannot be made the
basis of a jury finding that defendant while sober enter-
tained the requisite specific intent to commit a particular
crime.

10. CRIMINAL LAW—SPECIFIC INTENT—VOLUNTARY INTOXICATION—
INTENDED CONSEQUENCES.

Specific intent will not be implied as an intended consequence of
voluntary intoxication since the consequence which a voluntary
drinker is deemed as a matter of law to intend is the crime
committed, not that he entertained any specific intent requi-
site to its commission.

11. CRIMINAL LAW—CRIMINAL PROPENSITY—RESPONSIBILITY.

A person with a prior history of committing crimes while in-
toxicated is not held to a higher standard of criminal respon-
sibility than one who has no such history, since present law
does not differentiate between wrongdoers on the basis of
their propensity for crime.

12. CRIMINAL LAW—SPECIFIC INTENT—GENERAL INTENT.

Proof of an accused's general recklessness cannot be made to
substitute for proof of his specific intent to commit a par-
ticular crime so long as the distinction between general and
specific intent is a controlling legal concept since under exist-
ing precedent, if a crime charged cannot be committed unless
the accused entertain a specific intent at the time the crime
was committed, he is not guilty if he did not entertain that
intent by reason of intoxication.

13. CRIMINAL LAW — DEFENSES — INTOXICATION — INSTRUCTIONS TO
JURY — NEW TRIAL.

A criminal conviction must be reversed and a new trial ordered
where an erroneous instruction regarding intoxication as a
defense is given, even in the absence of a defense request to
charge.

14. CRIMINAL LAW—LINEUP—IDENTIFICATION—PRESENCE OF COUN-
SEL.

An in-court identification of defendant was not tainted because
he was viewed in a lineup before trial in the absence of counsel
where that lineup took place before a United States Supreme

Court decision on June 12, 1967 holding that lineup confrontations for identification purposes after that date must be conducted in the presence of defense counsel.

15. ARREST—WARRANT—AUTHORIZATION.

An arrest warrant is not invalid because it is authorized by an assistant prosecuting attorney rather than by the prosecuting attorney since an assistant prosecutor can perform the prosecutor's duties when required.

DISSENTING OPINION
J. H. GILLIS, J.

16. CRIMINAL LAW—COURT RULES—APPLICABILITY.

*The general court rules of 1963 are applicable to criminal trials conducted after January 1, 1963, the effective date of those rules (GCR 1963, 785.1[1]).*

17. APPEAL AND ERROR—INSTRUCTIONAL ERROR—PRESERVING QUESTION—COURT RULE.

*Instructional error can be preserved only if a party objects either to the giving or to the failure to give an instruction and the sole exception to this court rule occurs when a strict application of it is inconsistent with substantial justice (GCR 1963, 516.2, 529.1).*

18. APPEAL AND ERROR—INSTRUCTIONAL ERROR—PRESERVING QUESTION—COURT RULE.

*Preservation of instructional error by objection is the specified procedure under court rules to preserve such error for review and if that procedure is not followed, the only basis for review is whether an appellate court refusal to consider such nonpreserved instructional error would be inconsistent with substantial justice (GCR 1963, 516.2, 529.1).*

19. APPEAL AND ERROR—COURT RULES—INSTRUCTIONS TO JURY—HARMLESS ERROR.

*Assuming* arguendo *that a small portion of an instruction relating to defendant's knowledge of his propensity to commit a crime while drunk was error, it was at best harmless error and not inconsistent with substantial justice (GCR 1963, 529.1).*

20. Appeal and Error—Statutes—Instructional Error—Miscarriage of Justice.

> *A criminal conviction should not be reversed on the ground of misdirection of the jury unless it affirmatively appears to the reviewing court, after an examination of the entire cause, that the instructional error complained of, if true, resulted in a miscarriage of justice (MCLA § 769.26).*

21. Appeal and Error—Statutes—Instructional Error—Miscarriage of Justice.

> *Reversal of defendant's conviction of armed robbery should not have been granted on the ground of misdirection of the jury, where the instructions, considered as a whole, did not constitute reversible error and the instructional error complained of, if true, did not result in a miscarriage of justice (MCLA § 769.26).*

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 March 6, 1969, at Lansing. (Docket No. 4,486.) Decided February 6, 1970. Leave to appeal denied June 16, 1970. 383 Mich 792.

Robert Dean Kelley was convicted by a jury of armed robbery. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*Luke Quinn* and *John F. Sopt,* for defendant on appeal.

Before: J. H. Gillis, P. J., and Levin and Bronson, JJ.

Levin, J. The defendant appeals his conviction of armed robbery.[1] We reverse because of instructional error concerning the intoxication defense.

---

[1] MCLA § 750.529 (Stat Ann 1969 Cum Supp § 28.797).

The people's evidence showed that the defendant and George Moore entered a drug store at 8:30 p.m. and held it up using revolvers.

At the trial the defendant testified that for several days before the robbery he had been drinking heavily. He claimed that after drinking 20 to 25 bottles of beer during the morning of the day the crime was committed he drove his car to Moore's house to buy some insulation from him. After purchasing the insulation the defendant and Moore made two automobile trips to the defendant's house transporting the insulation. The defendant further testified that he continued to drink throughout the morning; he said that he and Moore consumed some 24 bottles of beer transporting the first load of insulation, and that additional beer was consumed delivering the second load. The defendant said he then took a couple of benzedrine capsules to "appease" Moore. The defendant claimed that he had no recollection of anything that occurred that day after taking the benzedrine owing to an alcoholic blackout.[2] Thus, he said, he could not recall his participation in the robbery.

The defendant also provided an extensive history of alcoholism beginning at the age of 15, reflected in military service and civilian criminal records. In 1956 he was convicted of armed robbery; he was intoxicated when that offense was committed. He said, however, that he had an awareness of his actions at that time which he did not have at the time the currently charged robbery was committed.

---

[2] "After numerous overindulgences some drinkers may begin to experience mental blackouts. After a certain point in a drinking bout they are unable to remember what happened. They do not pass out or become unconscious, but their intelligence is as clouded as that of a psychotic, and their control is equally impaired." Deddens, Volitional Fault and the Intoxicated Criminal Offender, 36 U Cinc L Rev 258, 259 (1967), citing a study of the Public Health Service, U. S. Department of Health, Education and Welfare.

He stated he could recall only one previous incident of overtly antisocial behavior after blacking out due to intoxication, when, as a soldier and while grossly intoxicated, he was removed from a machine gun behind the lines and struck the company commander in a fight. The defendant said he had experienced many blackouts of an uneventful nature. He had previously committed at least one crime while sober.

The defense in this case was that by reason of intoxication the defendant was not aware of, and, therefore, was not criminally responsible for, his actions at the time the crime was committed.

At common law, a trespass was not criminal unless the actor entertained that culpable state of mind termed *mens rea*.[3] This element of every common-law crime is sometimes referred to as general intent. The universally accepted rule in this country is that general intent cannot be negatived by evidence that the actor was intoxicated at the time the crime was committed. This doctrine is expressed in the oft-repeated maxim that "voluntary intoxication is no excuse for crime."[4]

The rigor of this doctrine has been relaxed where the people must prove that the actor entertained a

---

[3] A killing may be accidental. A battery may be only tortious. A taking of property may be a mere conversion. "A criminal intent is a necessary ingredient of every crime." *Pond v. People* (1860), 8 Mich 150, 174; 21 Am Jur 2d, Criminal Law, § 81, p 162. See, also, *Morissette v. United States* (1952), 342 US 246 (72 S Ct 240, 96 L Ed 288), which traces the development of the *mens rea* requirement and the application of this concept to statutory crimes. *Cf.* *People v. Sybisloo* (1921), 216 Mich 1, 4, 5.

[4] See, generally, 21 Am Jur 2d, Criminal Law, § 107, pp 185–187; 22 CJS, Criminal Law, §§ 66, 68, pp 214–219; Deddens, *op cit*, fn 2. Nineteen states have statutes on intoxication. All these states, except Texas, do not allow voluntary intoxication as a defense unless it disproves the existence of a state of mind which is an essential element of the crime charged. In those states without a statute the common law reaches the same result, except for Missouri and Vermont. Note, Intoxication as a Criminal Defense, 55 Colum L Rev 1210 (1955); Deddens, *op cit*, fn 2, pp 267, 270.

specific intent in addition to general intent.[5]   Thus,
although intoxication is not a defense where only
general intent needs to be shown, *e.g.*, where the
crime charged is involuntary manslaughter[6] or stat-
utory rape,[7] the Michigan Supreme Court has held
that it can be shown to negative the requisite specific
intent where the crime charged is assault with intent
to murder,[8] assault with intent to rape[9] and assault
with intent to do great bodily harm less than the
crime of murder.[10]   And since larceny "does not
consist in the wrongful taking of the property, for
that might be a mere trespass; but it consists in
the wrongful taking with felonious intent," intoxi-
cation can be shown to negative that felonious in-
tent.[11]   Following fundamentally the same analysis,
the Court has also held that burglary and breaking
and entering are specific intent crimes.[12]

In this case the prosecutor concedes, the trial
judge charged the jury and we agree that armed
robbery is a specific intent crime.   Robbery is lar-
ceny committed by assault or putting in fear[13] and,
as we have already seen, larceny is a specific intent
crime.

The intoxication defense was first discussed by
the Michigan Supreme Court in *People* v. *Garbutt*
(1868), 17 Mich 9.[14]   Garbutt was convicted of mur-

---

[5] See fn 4.

[6] See *People* v. *Townsend* (1921), 214 Mich 267, 280.

[7] See *People* v. *Murray* (1888), 72 Mich 10, 13.

[8] See *Roberts* v. *People* (1870), 19 Mich 401; *People* v. *Jones*
(1924), 228 Mich 426.

[9] See *People* v. *Guillett* (1955), 342 Mich 1.

[10] See *People* v. *Berryhill* (1967), 8 Mich App 497.

[11] See *People* v. *Walker* (1878), 38 Mich 156.   *Cf. People* v. *Cum-
mins* (1882), 47 Mich 334.

[12] See *People* v. *Eggleston* (1915), 186 Mich 510; *People* v. *Depew*
(1921), 215 Mich 317.

[13] See *People* v. *Royce Alexander* (1969), 17 Mich App 30, 31.

[14] *Garbutt* was distinguished in *People* v. *Guillett, supra,* on the
basis that (p 6) "the crime involved in that case was murder, not a
specific intent crime." But, see, *People* v. *Toner* (1922), 217 Mich
640, 649.

der.   The Court held that the trial judge had correctly refused to charge the jury that they must acquit the defendant if they believed that he was intoxicated to such an extent that he was not conscious of what he was doing at the time the offense was committed.   The Court stated that to recognize intoxication as a defense (p 19):

"would be a most alarming [doctrine] to admit in the criminal jurisprudence of the country, and we think the recorder was right in rejecting it.  *A man who voluntarily puts himself in condition to have no control of his actions, must be held to intend the consequences.*  The safety of the community requires this rule.   Intoxication is so easily counterfeited, and when real it is so often resorted to as a means of nerving the person up to the commission of some desperate act, and is withal so inexcusable in itself, that the law has never recognized it as an excuse for crime."   (Emphasis supplied.)

Two years later, in *Roberts* v. *People* (1870), 19 Mich 401, the Michigan Supreme Court for the first time drew the distinction between general and specific intent.   Roberts was convicted of assault with intent to murder.   The Court referred to *Garbutt* and stated that the consequence which a man who voluntarily becomes intoxicated is held, as a matter

---

On the ground that intent to kill is not a necessary element of murder, courts in some jurisdictions have taken the position that murder is not a crime of specific intent.   But even those jurisdictions, as a rule, permit intoxication to be shown to negative the premeditation and deliberation necessary to convict one of first degree murder.   Still other courts, in recognition of the fact that when a killing is deemed murder without proof of intent to kill it is because that intent is implied from reckless behavior (Moreland, Law of Homicide, pp 15, 16, 18, 19, 35, 36), have allowed the defense to negative murder and to reduce the crime to voluntary manslaughter.   The cases are collected in Anno: Voluntary Intoxication as Defense to Homicide, 12 ALR 861; 79 ALR 897.   Similarly, see Deddens, *op cit*, fn 2, pp 272, 273; Note, Intoxication as a Criminal Defense, 55 Colum L Rev 1210, 1214, 1215 (1955); Hall, General Principles of Criminal Law (2d ed), pp 534, 546.

of law, to intend is (pp 416, 417) "the crime actually committed; and not in this case the intent charged, if the defendant was at the time incapable of entertaining it, and did not in fact entertain it."

In *People* v. *Walker* (1878), 38 Mich 156, the defendant's conviction of larceny was reversed because the trial judge refused to charge that intoxication could be a defense. The Supreme Court declared (p 158):

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed. This was fully explained by Mr. Justice CHRISTIANCY in *Roberts* v. *People* (1870), 19 Mich 401, and is familiar law."

In *People* v. *Guillett* (1955), 342 Mich 1, Guillett's conviction of assault with intent to commit rape was reversed by the Michigan Supreme Court because the trial judge gave a charge modeled on *Garbutt* and not on *Roberts*. The Court observed (p 6):

"It is important in this decision to emphasize that intoxication may only negative the existence of *specific intent*. Examination of the cases reveals that where the rule was applied, it was done so in cases where the crime charged also involved a specific intent." (Emphasis by the Court.)

In the case now before us the trial judge charged the jury:

"Now concerning intoxication and intent, I instruct you that an inability to remember as the

result of amnesia, whether it was caused by alcohol or otherwise, is not a defense to a crime; that is to say, a person does not have to remember. A person who voluntarily puts himself in a state of intoxication must be held to have intended the consequences which actually ensued, the crime actually committed. However, the crime of armed robbery includes the intent to steal and to take money or other property from the person, or the property of another without any claim or color of right. And if the respondent's mental faculties were so far overcome by intoxication that he wasn't conscious of what he was doing, or if he did not know why he was doing it, then he could not have such an intent; that would mean, he would be too drunk to have such an intent.

"However, I also instruct you that if the respondent had knowledge that when he drinks he may lose his faculties, and without control over his actions commit a crime, then such prior knowledge of criminal propensity would be a basis for your finding that he intended to do what he did."

The first paragraph of the judge's instruction is a correct statement of the law.[15] A person who voluntarily puts himself in a state of intoxication is deemed to intend the consequences which actually ensue, the crime actually committed, in this case

---

[15] Although this is a correct statement of the law, it should not be stated in jury instructions unless a defendant injects the intoxication defense before the jury and the defense is not available either because the crime charged is not a specific intent crime or as a matter of law there is insufficient evidence of intoxication (see, *e.g.*, *People* v. *Kirk* [1908], 151 Mich 253, 258). To tell a jury that intoxication is not a defense in one breath and in the next that it may negative specific intent is to ask the jury to comprehend a distinction which takes considerable time for the trained legal mind to grasp and, once comprehended, defies rational explication. See fn 25 and accompanying text. Although a correct statement of the law, this portion of the instruction was confusing and misleading. "[T]he arcane jargon of the law should not be recited *in vacuo* but, rather, the law *pertinent* to the case should be related in a meaningful manner to the evidentiary facts of the case." *Hill* v. *Harbor Steel & Supply Corporation* (1965), 374 Mich 194, 208. (Emphasis supplied.)

armed robbery. Or, to state it differently, as a matter of law, voluntary intoxication may not be shown for the purpose of establishing that the defendant did not entertain the general intent (*mens rea* or culpability) necessary to commit the crime.

Since armed robbery is, as we have previously stated, a crime of specific intent, the trial judge properly went on to charge that if the defendant's mental faculties were so far overcome by intoxication that he was not conscious of what he was doing, or he did not know what he was doing,[16] then he could not entertain that specific intent and, therefore, in the words of the *Walker* Court, there being "no such intent, the crime cannot have been committed."

The last sentence of this portion of the instructions, *viz.*:

"However, I also instruct you that if the respondent had knowledge that when he drinks he may lose his faculties, and without control over his actions commit a crime, then such prior knowledge of criminal propensity would be a basis for your finding that he intended to do what he did."

was, however, erroneous. This portion of the charge seems to be modeled on *Roberts,* but mistakenly.

In the situation hypothesized in *Roberts,* a defendant "had formed the intent" to commit the crime before he became intoxicated. It is not claimed, however, that the defendant Kelley while he was

16 See *Roberts* v. *People, supra,* p 418. Judicial statements of this rule are frequently framed in terms of the effect of intoxication on the mental capacity to form an intent rather than in terms of whether the actor entertained the requisite intent. See *Roberts* v. *People, supra; People* v. *Peterson* (1911), 166 Mich 10. Contrast *People* v. *Walker, supra,* and *People* v. *Guillett, supra.* This is a misplaced emphasis since the degree of intoxication which would render a person mentally incapable of entertaining the requisite intent is unlikely to be short of that which renders him unconscious. If the jury were to follow such an instruction literally, it is doubtful that intoxication could ever be a defense. Note, Intoxication as a Criminal Defense, 55 Colum L Rev 1210, 1212, 1214, (1955).

sober formed the specific intent requisite to the commission of the crime of which he was convicted. Moreover, this case was not submitted to the jury on the theory that the defendant while sober decided to commit armed robbery. A different question would be presented if, on the basis of evidence that the defendant had formed that intention while sober, the judge had instructed the jury that if they credit that evidence intoxication would not be a defense.[17]

It was, therefore, incorrect to charge that intoxication would not be a defense if Kelley knew before he began to drink that if he became drunk he might commit "a crime"—any crime. Under *Roberts,* to entirely eliminate intoxication as a defense, a defendant must, while sober, have formed the specific intent requisite to the commission of the particular crime he is charged with committing.[18]

The defendant in *Roberts* also claimed insanity but introduced no evidence tending to show insanity distinct from and independent of the effects of in-

---

[17] Similarly a different question would be presented if it were shown that the defendant had decided while sober to commit larceny. Since the requisite specific intent for the commission of armed robbery is a larcenous intent, arguably it should not make any difference that the defendant did not know when sober from whom he would attempt to steal or whether he would attempt to steal by burglary, robbery or in some other manner.

We have examined the cases referred to in the annotations cited in footnote 14 and other cases. Innumerable cases state as dictum or holding that intoxication is not a defense if the intent to commit the crime was formed while the actor was sober. However, we found no suggestion in the cases that the intoxication defense is not available to one who merely has knowledge of a propensity to commit crime while intoxicated, that knowledge of that propensity is enough to negative the defense even though the actor does not while sober form the specific intention requisite to the commission of a particular crime.

[18] The *Roberts* Court stated (p 416) "that if the defendant had formed the intent while in possession of his mental faculties, and entertained it before and at the time he became intoxicated, his subsequent voluntary intoxication to whatever extent, would not shield him from a conviction of the offense charged, including the intent, nor even for murder had death ensued from the assault." See, also, p 406, proposed instruction four, and discussion of the "intent charged," *i.e.,* the intent to kill, on pp 414–416.

toxication. The Supreme Court ruled that if the jury found that Roberts knew that intoxication would trigger a dormant tendency to insanity, then insanity would be a defense only if the defendant was insane without regard to his intoxication.[19] That cannot be read, as the trial judge appears to have read it in this case, as meaning that if the defendant Kelley had knowledge that when he drinks he may lose his faculties and without control over his actions commit "a crime," such prior knowledge of criminal propensity would be a basis for a finding that he entertained the intent required to commit the particular crime he was convicted of committing. The *Roberts* opinion states only that intoxication may not be relied upon to establish a defense *other* than intoxication when the actor knows before he begins to drink that drinking may cause a condition which would create a factual basis for that defense. This did not create an exception to the intoxication defense itself.

The instruction given in this case eliminates the very distinction drawn in *Roberts,* the distinction between general intent and specific intent. The judge's charge that the intoxication defense is unavailable if the jury finds that the defendant knew while sober that when he drinks he may commit a crime, any crime, means that a defendant's knowledge of a propensity to commit when drunk, say, the crime of blasphemy, or gambling, or gross inde-

---

[19] The *Roberts* Court stated that (p 422): "if, from his past experience or information, he [the defendant] had, while sane and before drinking, on that day, good reason to believe that, owing to a dormant tendency to insanity, intoxication would be likely to produce an extraordinary degree of mental derangement beyond the effects likely to be produced upon persons clear of any such tendency, he must be held to have intended this extraordinary derangement as well as the intoxication and the other results produced by it. And the same degree of mental incompetency would be required to render him incapable of entertaining the intent, whether caused by the intoxication combined with the insanity thus produced, or by the intoxication alone."

cency, or murder, would eliminate the defense even
if the crime actually charged is, say, armed robbery
or some other crime of specific intent. That is not
the law. Prior knowledge of a propensity to com-
mit some crime cannot be made the basis of a finding
by a jury that a defendant while sober entertained
the requisite specific intent to commit a particular
crime.[20]

The prosecutor argues that Kelley must be held
to intend the consequences of his actions because
he voluntarily became intoxicated. Putting aside
the question whether an alcoholic drinks voluntarily,
under present law the consequence which a voluntary
drinker is deemed as a matter of law to intend is
the crime committed, not that he will entertain any
specific intent requisite to its commission. Indeed,
the essence of the exception for specific intent crimes
to the general rule that intoxication is not a defense
is that specific intent will not be implied as an in-
tended consequence of voluntary intoxication.

During the discussion of his proposed jury charge
with counsel for the parties the trial judge expressed
the view that a man with the defendant's history of
intoxication should be deemed fully accountable for
the crimes he commits while intoxicated. We agree
with the judge that one who has a history of com-
mitting serious crimes when he drinks is a threat
to the safety of the community and that in the spec-
trum of moral responsibility one who has such a
history and commits a crime in that condition is gen-
erally more heinous than one who commits a crime
while intoxicated but who has no such history.

The question before us, however, is one of crim-
inal responsibility, not moral responsibility. Pres-
ent law simply does not differentiate between wrong-
doers based on their propensity for crime, holding

---

[20] *Cf. People* v. *McKeighan* (1919), 205 Mich 367, 373.

one with a prior history of committing crimes while intoxicated to a higher standard of criminal responsibility than one who has no such history.

It has been suggested that the law needs revision. One commentator would eliminate the intoxication defense where a normal drinker knows of his propensity to commit crime while intoxicated;[21] but that innovation would not be of much value when the drinker, like the defendant Kelley, is an alcoholic.[22]

It has also been suggested that a person who has a prior history of commission of crime while drunk and nevertheless drinks and commits a crime should not be held responsible for the commission of that crime, but rather for the crime of drinking knowing of that propensity; that he should be charged with the commission of a newly created offense of reckless or negligent intoxication in lieu of the offense which he committed while drunk.[23]

---

[21] See Hall, General Principles of Criminal Law (2d ed), p 557.

[22] Some would treat alcoholics differently than normal drinkers in recognition of the involuntary behavior of the alcoholic. Deddens, *op cit*, fn 2, p 303.

Two recent cases have broken new ground by reversing convictions for public intoxication on the grounds that the defendant was not allowed to assert alcoholism as a defense. See *Easter* v. *District of Columbia* (1966), 24 App DC 33 (361 F2d 50); *Driver* v. *Hinnant* (CA4, 1966), 356 F2d 761. Contrast *People* v. *Hoy* (1966), 3 Mich App 666. The reasoning was that to convict an alcoholic of drunkenness is to punish him for a symptom of a disease, and would therefore be cruel and unusual punishment in violation of the Eighth Amendment rights inherent in the due process clause. Although both cases were careful to assert that they recognized alcoholism as a defense only to crimes which were fundamentally sympomatic of a disease, recognition of the compulsive character of the alcoholic's behavior could undermine judicial statements which defend the traditional rule by arguing that the intoxicated offender has voluntarily incurred the risk that he will engage in antisocial conduct.

[23] While it is entirely true that a man heavily under the influence of alcohol or narcotics (see 21 Am Jur 2d, Criminal Law, § 109, p 188, concerning narcosis as a defense) may not entertain the intent requisite to the commission of a particular crime, it is difficult to justify freeing a person who has a history of pronounced antisocial conduct while under the influence of such sedation. Such persons represent a serious threat to the safety of the community. It is, of course, unlikely that a jury would bring in a verdict which would release such a person; nevertheless, a reappraisal of

A somewhat related proposal is that we adopt the approach of the German penal code and hold those who commit crimes while drunk to a lesser, as it has been termed, a "diminished responsibility."[24]

It has also been maintained that the availability of the intoxication defense should not depend on whether a court chooses to characterize an element of the crime charged as separate from the element of general intent.[25] It has been observed that neither common experience nor psychology knows of any such phenomenon as "general intent" distinguishable from "specific intent."[26] It does seem incongruous

---

the criminal responsibility of drunkards and drug addicts is clearly required.

Entirely rational and workable would be legislation delineating a new crime to which a defense based on lack of criminal responsibility attributable to addiction could not be interposed: the crime of committing crimes under the influence of drugs or liquor. The crime could be graded depending on the extent and the gravity of the antisocial act(s) previously committed in a comatose condition, and on the antisocial conduct immediately involved. In this manner the humanity and sound policy of allowing the defense would be retained; however, in a case where a person with such a criminal history has again committed a serious crime, the prosecutor could charge him appropriately, e.g., those with a history of committing serious crime while drunk could be charged with reckless intoxication; those with a history of committing minor crime in that condition with negligent intoxication. And, as just mentioned, there could be additional variations depending on the gravity of the current conduct; and, also, on whether the actor is an alcoholic.

Professor Glanville Williams would hold one who commits a homicide while grossly inebriated for the offense of being "drunk and dangerous." Williams, Criminal Law, p 573 (2d ed). Professor Jerome Hall would reduce the charge to manslaughter. Hall, General Principles of Criminal Law (2d ed), p 557; see, generally, pp 554–557. See discussion of grading in German Penal Code in Deddens, op cit, fn 2, pp 289, 290.

[24] See German Draft Penal Code of 1962, translated in 11 The American Series of Foreign Penal Codes (Ross translation, 1966). See Mueller, The German Draft Criminal Code 1960—An Evaluation in terms of American Criminal Law, 1961 U of Ill L F 25 (1961); Deddens, op cit, fn 2, p 287 et seq.

[25] It has been argued that a system of law which does not hold an insane man criminally responsible cannot reasonably and logically hold criminally responsible a man whose condition at the time he commits the crime is equivalent to insanity. See Deddens, op cit, fn 2.

[26] See Hall, Intoxication and Criminal Responsibility, 57 Harv L Rev 1045, 1064 (1944).

to make the admissibility of mitigating evidence depend on whether the statutory definition of a crime includes a separately stated intent, and other methods of defining specific intent are highly manipulable.[27]

The clumsiness of the exculpatory device has been criticized. A defendant who is charged with a specific intent crime may go free if he can prove he was intoxicated; this result contrasts sharply with the absolute denial of relief to the intoxicated offender charged with a crime of general intent.[28]

If the function of the general/specific intent distinction is to eliminate the defense as to lesser

---

Hall, General Principles of Criminal Law (2d ed), pp 142–145, 546.

[27] The murderer intends to kill or to do an act so wanton as to justify the implication that when he acted he contemplated the taking of human life (see footnote 14). A kidnapper intends to confine his victim; the arsonist intends to burn property, and so on.

The diversity of judicial analysis of particular crimes appears upon an examination of Anno: Modern Status of the rules as to Voluntary Intoxication as Defense to Criminal Charge, 8 ALR3d 1236. Similarly, see Clark and Marshall, Crimes (6th ed), § 6.09, p 389, stating that the defense has been allowed to negative knowledge of essential *facts, e.g.,* that an instrument is forged, that money was counterfeit.

The defense was recognized in *People* v. *Haley* (1882), 48 Mich 495, where the defendant was convicted of obstructing an officer, and *People* v. *Peterson, supra,* fn 16, where the defendant was convicted of the careless use of a firearm. *Cf. People* v. *Counts* (1947), 318 Mich 45 (felonious assault).

We note that *Garbutt, Townsend* and *Murray* are the only Michigan cases which have refused to recognize the defense; those decisions may be explained without regard to the general/specific intent distinction. *Garbutt* was the first Michigan case discussing the intoxication defense and was decided in the infancy of the defense before it became widely known. The seminal case actually allowing the defense (there is dictum in earlier cases) is *Regina* v. *Cruse* (NP 1838), 8 C & P 541 (173 Eng Rep 710). *Townsend* was a case of involuntary manslaughter arising out of an automobile accident; allowing the defense in automobile cases may be thought to present special problems. *Murray* was a case of what is commonly called statutory rape, an offense where the intent of the actor is of minimal significance as the crime can be committed even if the girl represents herself to be and appears to be well past 16 years of age.

[28] See Deddens, op cit, fn 2, pp 274–276, 285–287; Hall, Intoxication and Criminal Responsibility, 57 Harv L Rev 1045, 1061–1063 (1944).

included offenses, *e.g.*, assault and battery, but to retain it for the more serious offenses, *e.g.*, armed robbery,[29] and in that manner mitigate the general rule that intoxication is not a defense, then manifestly this should be done on a consistent basis. The right to interpose this defense should depend on something more substantial than a technical distinction that was seized upon by a judge 130 years ago and adopted by other judges to reach results thought sound in the cases then before them.

We recognize the contrariety of present law and the need for reappraisal of the intoxication defense. Some of the proposals that have been made would, however, require legislation. Others would require reshaping precedent which has become so well established that it is accepted dogma both in encyclopedias[30] and in carefully worked out recent revisions of State penal codes.[31] It is beyond our function, as an intermediate appellate court,[32] to inject policy considerations into our deliberations in a case such as this where the common law has taken on a symmetry of its own, however incongruous that symmetry appears upon analysis.

As long as the general/specific intent distinction is conceptually the controlling one, proof of the

---

[29] See *People* v. *Allie* (1921), 216 Mich 133, 136.

[30] See footnote 4.

[31] The traditional formulation making a distinction between general and specific intent is reflected in § 715 of the proposed Michigan Revised Criminal Code (final draft, September, 1967): "Intoxication of the actor is not a defense to a criminal charge, except as provided in subsection (3) [concerning involuntary or pathological intoxication], but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged."
The proposed Michigan provision is based on § 2.08 of the Model Penal Code (1962), which has been the model for many recent revisions of State penal codes.

[32] See *Hollerud* v. *Malamis* (1969), 20 Mich App 748, 758, fn 21; see, also, p 753, fn 6. See, also, *Abendschein* v. *Farrell* (1968), 11 Mich App 662 (Levin, P. J., dissenting), *affirmed Abendschein* v. *Farrell* (1969), 382 Mich 510.

actor's general recklessness cannot be made to sub-
stitute for proof of his specific intent to commit a
particular crime.  Under existing precedent if the
crime charged cannot be committed unless the actor
entertained a specific intent at the time the crime
was committed, he is not guilty if he did not enter-
tain that intent by reason of intoxication.

At the conclusion of the discussion between the
judge and counsel of his proposed jury charge, the
judge stated the intoxication instruction that he
would give.  The prosecutor expressed his satisfac-
tion and defendant's trial counsel stated, "I think
that is a fair instruction.  I disagree, I don't like
the instruction, but I think it is a fair instruction."

We find it unnecessary to attempt to fathom what
defendant's counsel meant by that ambiguous state-
ment for two reasons.  Firstly, the judge stated that
he saw great inconsistency in the law and expressed
the view that an appellate opinion might be helpful.
Secondly, in *People v. Guillett, supra,* pp 7, 8, the
Michigan Supreme Court has ruled that where an
erroneous instruction on the intoxication defense is
given, then, even in the absence of requests to charge,
the case must be reversed and a new trial ordered.[33]

It is necessary to consider two additional assign-
ments of error as they concern questions which will
arise upon the new trial.

The defendant argues that his courtroom identifi-
cation was tainted because he was viewed in a lineup

[33] The principle of the *Guillett* case has been followed by the
Michigan Supreme Court after the promulgation of the General Court
Rules of 1963.  See *People v. Liggett* (1967), 378 Mich 706, 714;
see, also, *People v. Oberstaedt* (1964), 372 Mich 521, 526; and has
been followed by our Court in *People v. Sherman* (1968), 14 Mich
App 720, 723; *People v. Bowen* (1968), 10 Mich App 1, 18; *People
v. Price* (1970), 21 Mich App 694.  In *Price* we relied on *People
v. MacPherson* (1949), 323 Mich 438; *People v. Liggett, supra,* and
*People v. Bowen, supra.*  See, also, *People v. McIntosh* (1967), 6
Mich App 62, 69; *People v. Pearson* (1968), 13 Mich App 371, 377.
An early case stating the same principle is *People v. Murray* (1888),
72 Mich 10.

before trial in the absence of counsel. The lineup took place before the United States Supreme Court decided *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). In *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199), the United States Supreme Court declared:

"We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date."

Our Court has held that this means that *Wade* applies only to lineups which take place after the date *Wade* and *Stovall* were decided.[34]

The defendant also contends that the warrant obtained for his arrest was invalid because it was authorized by an assistant prosecuting attorney rather than by the prosecuting attorney himself. In *People* v. *Jarboe* (1968), 10 Mich App 476, 479, we rejected the contention that an assistant prosecutor can perform the prosecutor's duties only during his absence or disability.

We see no need to address ourselves to the defendant's claim that evidence illegally seized was erroneously admitted. The defendant did not file a motion to suppress in advance of the trial and the relevant facts have not been developed. Since the case will be retried, this claim can be considered before the new trial if a motion to suppress is filed in advance of trial.[35]

Reversed and remanded for a new trial.

Bronson, J., concurred.

J. H. Gillis, P. J. (*dissenting*). I dissent for the following reasons:

---

[34] See *People* v. *Kaczor* (1968), 14 Mich App 724.
[35] See *Gouled* v. *United States* (1921), 255 US 298, 312, 313 (41

I

This appeal involves a trial which was conducted after January 1, 1963.[1] The General Court Rules are applicable to criminal trials. GCR 1963, 785.1 (1). The alleged error relied on for reversal by the majority cannot be assigned as error because the defendant failed to comply with GCR 1963, 516.2.

This Court has consistently held that in order to preserve error pertaining to the giving of an instruction there must be compliance with GCR 1963, 516.2. See *People* v. *Keys* (1968), 9 Mich App 482; *People* v. *Keiswetter* (1967), 7 Mich App 334; *People* v. *Dexter* (1967), 6 Mich App 247; *People* v. *Cassiday* (1966), 4 Mich App 215; *People* v. *Mallory* (1966), 2 Mich App 359. The Michigan Supreme Court has adopted the same view. *Nuccio* v. *Severini* (1965), 374 Mich 189, 191; *Salvatore* v. *City of Harper Woods* (1963), 372 Mich 14; *Smith* v. *Musgrove* (1964), 372 Mich 329; *Sarazin* v. *Johnson Creamery, Inc.* (1964), 372 Mich 358; *McKinney* v. *Anderson* (1964), 373 Mich 414.

The one exception to this strict application of GCR 1963, 516.2, occurs when such application is inconsistent with substantial justice. GCR 1963, 529.1. See also *Hunt* v. *Deming* (1965), 375 Mich 581. The latter also indicates that language in Supreme Court opinions prior to GCR 1963 relating to claimed error in jury instructions is no longer applicable.

The philosophy behind GCR 1963 was to de-emphasize procedural niceties so that cases could be more readily disposed of on their merits. GCR 1963, 13 and committee comment thereunder; GCR 1963, 529.1. This philosophy comports with that expressed legislatively in MCLA § 769.26 (Stat Ann

S Ct 261, 266, 65 L Ed 647, 654), and *Amos* v. *United States* (1921), 255 US 313, 316 (41 S Ct 266, 267, 65 L Ed 654, 656).

[1] Effective date of GCR 1963.

1954 Rev § 28.1096). The majority opinion and the authorities therein relied upon are not only contrary to this philosophy, they demonstrate the reason for adopting it, namely: courts should look to substance not form.

GCR 1963, 516.2, does not abrogate defects of form as a basis for relief; it specifies the procedure required to save such defects for review. If that procedure is not followed, the only basis for review is that expressed in GCR 1963, 529.1. The question then becomes: is it inconsistent with substantial justice to affirm this conviction with the language complained of in the jury instruction?

The language in the instructions seized upon by the majority as grounds for reversal may offend trained, scholarly minds but it does not offend the guiding principle "inconsistent with substantial justice."

## II

Assuming *arguendo* that that small portion of the instruction complained of was error, it was at best harmless error. And in accordance with the mandate set forth in GCR 1963, 529.1[2] the conviction should be affirmed.

## III

We are governed by MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096), which provides as follows:

---

[2] "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding shall construe these rules to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceeding which does not affect the substantial rights of the parties."

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

I cannot say after a full examination of the entire cause it affirmatively appears that the error complained of, if true, resulted in a miscarriage of justice.

## IV

It is axiomatic that instructions to a jury must be considered as a whole and ample authority supports that proposition. Considering the instructions as given, I cannot say that the giving of such instructions constituted reversible error.

I would affirm the conviction.